HILL v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY

COMPANY.

Opinion delivered March 30, 1908.

1. CARRIER AND PASSENGER—WHEN RELATION CEASES.—The relation of carrier and passenger ceases only after the train has reached the passenger's destination, and he has had a reasonable time and opportunity to alight safely and to leave the premises of the carrier; and what is a reasonable time and opportunity is generally a question of fact for the jury. (Page 531.)

2. SAME—DUTY TO PERMIT PASSENGER TO ALIGHT.—Where a passenger, in hurriedly debarking from a train, leaves a package and re-enters for the purpose of getting it, there is a duty on the part of the trainmen not to start the train when he is in the act of alighting the second time, if such trainmen see him about to do so; and if he re-enters the car for that purpose by invitation or permission of a brakeman in charge of the train, there is also a duty to give him a reasonable time and opportunity to secure his package and alight from the train. (Page 531.)

Appeal from White Circuit Court; *Jesse N. Cypert,* Special Judge; reversed.

*J. H. Harrod,* for appellant.

The testimony shows that appellant was a passenger, that as he alighted from the train at Beebe he discovered the loss of his book and papers, and got permission of a brakeman to return to them, which he immediately did, and came out of the car as soon as he could get them, and that just as he went to alight the train started, causing him to fall. If the testimony was true, he had a meritorious cause of action, and it was for the jury to say whether or not it was true.

*T. M. Mehaffy* and *J. E. Williams,* for appellant.

Appellant was not a passenger at the time of the accident, and permission by the brakeman to re-enter the train for the purpose only of getting the articles negligently left by him would not bind the appellee, nor continue the relation of carrier and passenger. 74 Am. Dec. 254; 12 Am. Rep. 475; 15 Am. Rep. 513; 30 Am. Rep. 98; 52 Am. Rep. 705; 2 Am. St. Rep. 373; 4 Am. St. Rep. 394; 59 Ark. 395; 37 Am. St. Rep. 382; 6 Am. St. Rep. 730; 39 Fed. 596; 60 Ark. 106; 70 Ark.

606. Such permission to re-enter the train, etc., was not the proximate cause of the injury. 65 Ark. 64; 52 Am. Rep. 790; 51 *Id.* 284; 48 *Id.* 74; 59 *Id.* 632; 82 Ark. 590; 73 Ark. 548; 55 Ark. 64; 69 Ark. 81; 60 Ark. 106; 68 Miss. 9; 102 Mo. App. 430; 182 Pa. St. 457; 2 Hutchinson on Carriers (3 Ed.), 1126.

2. Appellant was guilty, as a matter of law, of such contributory negligence as to preclude a recovery. 44 Am. Rep. 505; 62 Am. Dec. 323; 61 *Id.* 214; 56 Am. Rep. 842; 66 Am. Dec. 406.

McCULLOCH, J. Appellant, E. P. Hill, sued the railway company to recover damages for personal injuries received while he was attempting to alight from a passenger train, and on the trial of the case before a jury the court gave a peremptory instruction in favor of the defendant. The question, therefore, presented on the appeal is whether the evidence, giving it the strongest probative force in favor of appellant's cause of action, is sufficient to warrant a verdict in his favor. The testimony tended to establish the following state of facts:

Appellant was a passenger on one of appellee's trains *en route* from Little Rock to Beebe. When the train reached Beebe, about seven o'clock in the evening, appellant stepped off, but immediately discovered that he had left a package containing his bank book and other papers on the seat, and went back into the car to get them. Before doing so, he spoke to the brakeman, who was standing at the steps assisting passengers to alight, and asked him whether he would have time to go back after his papers before the train started, and the brakeman replied that he would have ample time to do so. He went back into the car and secured his package, hurrying back as rapidly as he could, and as he attempted to alight the train started, and he was thrown down and injured. The brakeman suddenly picked up his lantern and step-box just as appellant was in the act of stepping down on the box, and appellant fell ·or was knocked down. The duties of the brakeman, while the train stood at the station, were to assist passengers to alight and to signal the conductor when all passengers for that station had got out of the car.

These facts, if established by evidence, were sufficient to warrant a verdict in appellant's favor, and the case should not

have been withdrawn from the consideration of the jury.

Appellant was still a passenger at the time he was injured, and was entitled to protection as such. The precise time at which one who rides on a train ceases to be a passenger is generally dependent upon the peculiar circumstances of each case, and it is difficult to lay down a rule on the subject applicable to all cases. The relation of carrier and passenger ceases only after the train has reached the passenger's destination and he has had a reasonable time and opportunity to alight safely and to leave the premises of the carrier. What is a reasonable time and opportunity is generally a question of fact for the jury. *Barringer* v. *St. Louis. I. M. & So. Ry. Co.*, 73 Ark. 548; 2 Hutchinson on Carriers, § 1016.

If a passenger, through forgetfulness in hurriedly debarking from a train, leaves a package in the car, and re-enters for the purpose of getting it, he does not necessarily cease to be a passenger. He is still within his rights as a passenger in re-entering the car for that purpose, and does not become a trespasser in so doing. The carrier, it is true, is not bound to hold the train for a forgetful passenger to return for baggage or packages; but when the passenger does re-enter the car for that purpose, there is a duty on the part of the carrier's servants in charge of the train not to start the train when he is in the act of alighting the second time, if such servant sees him about to do so; and if he re-enters the car for that purpose by invitation or permission of the carrier's servant in charge of the train, then there is also a duty to give him a reasonable time and opportunity to secure his package and alight from the car. The evidence in this case tends to show that the brakeman had control of the train temporarily to the extent that the conductor took signals from him when all passengers for the station had alighted. This placed him in control of the time allowed passengers to debark, and they had the right to rely upon any assurance given as to the length of time the train would remain at the station. It therefore became the duty of the brakeman, after he had assured appellant that he had ample time to go back into the car for his package, not to signal the conductor until appellant came out. In other words, the brakeman by his assurances to appellant extended the time given for debarkation,

and a premature starting of the train after then, whereby appellant was injured, rendered the carrier liable. The brakeman's position as guardian of the entrance to the car, with authority to notify the conductor when all was ready to start the train, carried with it the authority to give assurance to a passenger that the latter would have reasonable time in which to re-enter the car for the purpose named; and if he signaled the conductor before the passenger had reasonable time to alight, or failed to take steps to prevent the starting of the train, the carrier is liable for any injury caused by it.

The question whether or not the passenger had been guilty of contributory negligence in remaining in the car too long, or in attempting to alight from the moving train, is of course to be considered.

We think the question should have been submitted to the jury under proper instructions.

Reversed and remanded.