BARRINGER *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Opinion delivered January 14, 1905.

1. CARRIER—DUTY TO STOP AT STATION.—That an instruction to the effect that railway companies are bound to stop at stations a *sufficient* length of time to permit passengers to debark with safety was modified by substitution of the word *reasonable* for *sufficient* did not constitute error. (Page 551.)

2. SAME—REASONABLE TIME.—A reasonable time for a passenger to alight from a train is such time as a person of ordinary care and prudence, under the circumstances, should be allowed to take; and it is the duty of the carrier, in determining what is a reasonable time, to take into consideration any special condition peculiar to a passenger and to the surroundings at the station, and to give a reasonable time under the existing circumstances, as they are known or should be known by its servants, for a passenger to get on or off its train. (Page 551.)

3. SAME—INJURY BY RUNNING OF TRAIN—BURDEN OF PROOF.—An instruction which places upon a plaintiff who has established that his injuries were caused by defendant's train the further burden of proving that such injuries were caused by defendant's negligence was erroneous, as proof of injury by the operation of a railway train makes a *prima facie* case of negligence against the company operating such train. (Page 552.)

4. SAME—CONTRIBUTORY NEGLIGENCE.—In a suit for injuries alleged to have been sustained in alighting from defendant's train, proof that plaintiff was under the influence of liquor, and that he delayed several seconds before alighting, and that others had time to get off and on while he stood on the car step, was sufficient to establish contributory negligence on plaintiff's part. (Page 552.)

Appeal from Clark Circuit Court.

JOEL D. CONWAY, Judge.

Affirmed.

STATEMENT BY THE COURT.

The complaint alleges that appellant took passage on one of appellee's passenger trains at Camden, Arkansas, for Whelen, Arkansas, on the 25th day of December, 1900; that the train

was late, and crowded with passengers; and when it arrived at Whelen, appellant promptly attempted to leave the train, but the appellee negligently failed to stop its train long enough to permit him to alight, and, while appellant was in the act of alighting, negligently started the train with a sudden jerk, without notice to appellant, whereby he was thrown under the wheels and his leg so badly injured that amputation became necessary. The damage was laid at the sum of $10,000, etc.

The answer denied the material allegations of the complaint, and pleaded contributory negligence; and the case was tried before a jury, and a verdict rendered for the defendant.

The plaintiff testified: "I live near Whelen. Last Christmas day I went to Camden, and came back on the train the same day. I had four quarts of whisky. I got out when the train got to Whelen. I do not suppose I went at breakneck speed as I came out on the steps. I might have stopped a very short time. When I got down, the train was just about moving, already moving. Just as I hit the platform, the gravel ran out from under me, and I tried to regain my position, but failed to do so. I had not been on the ground before. I spoke to the brakeman, and said something to him about putting me off at the mill. I did not see the conductor there. I was sitting, I suppose, on the third or fourth seat from the rear end of the car. When the train got to Whelen, I got up, and came right out of the car, not in a great rush, but about as I usually get off a train. When I stepped off, the train likely had not moved a foot. The train usually consisted of three coaches. It started off right fast that day. I fell, and the car wheel cut my leg off," etc. Cross-examination: "I don't think I got up before the train stopped. I suppose I stopped at the door two or three seconds, and spoke to the brakeman. The train started to move as I stepped from the platform, and my foot rolled on the gravel. I do not suppose I would have fallen if my foot had not rolled on the gravel, nor if the train had not been moving. I did not see the conductor. I saw no signal to start, and did not hear the brakeman hollo, 'All aboard!' The train was not in motion when I started down the steps, but got in motion just as I went to step off. I had taken three drinks that day—one in Camden and two on the train."

There were other witnesses for appellant, but none make the case any stronger for him than his own testimony.

The testimony for appellee by several witnesses tended to show that appellant got off the train on the ground, and was entirely away from the train; but when it started he caught the handle bars, and attempted to get on again; that he was under the influence of liquor, and lost his footing, falling under the car, ·receiving the injury complained of.

*W. F. Osborne* and *McRae & Tompkins,* for appellant.

The fact that appellant was injured by one of appellee's trains is *prima facie* evidence of negligence. 63 Ark. 636; 65 Ark. 235. Instruction No. 3, relating to the time in which appellee should give passengers time to alight, was erroneous. 6 Cyc. 613; 5 Am. & Eng. Enc. Law (2d Ed.), 577; 27 Minn. 178.

*B. S. Johnson,* for appellee.

There was no error in the instructions given by the court. 49 Ark. 188; 54 Ark. 28; 55 Ark. 429; 20 Wis. 244; 37 Minn. 178; 18 Wis. 175. Conductors are required to wait only long enough to give passengers a reasonable opportunity to get off or on. 75 Mo. 185; 86 Mo. 421; 94 Mo. 255; 36 Neb. 642; 4 Elliott, Railroads, § 1591; 80 S. W. 707, 84 Mo. App. 340; 93 Mo. App. 287. The instructions given at the request of the appellee were correct. 33 Ark. 816; 63 Ark. 536; 65 Ark. 235; 70 Ark. 481; 68 Ark. 171; 10 Minn. 107; 7 Ind. 44; 1 Ark. 279; 9 Ark. 270; 4 Ark. 18. Every word in the constitution is to be expounded in its plain, obvious and common-sense meaning, unless the context furnishes some ground to qualify and enlarge it. 52 Ark. 339; 60 Ark. 343; 26 Ark. 281·; 27 Ark. 629. Construction of .section 6349. Sandels & Hill's Digest. 49 Ark. 535; 63 Ark. 840; 41 Ark. 161; 49 Ark. 535; 63 Ark. 633; 66 Ark. 46; 70 Ark. 558. Where the verdict is right upon the whole case, it will not be disturbed for a technical error. 4 Ark. 525; 14 Ark. 114; 10 Ark. 53; 19 Ark. 96; 2 Ark. 115; 21 Ark. 469; 23 Ark. 121; 24 Ark. 326, 587; 26 Ark. 373; 44 Ark. 556; 43 Ark. 296; 46 Ark. 542; 37 Ark. 238; 59 Ark. 431; 46 Ark. 485; 50 Ark. 68.

WOOD, J., (after stating the facts.)    The court modified appellant's first and second prayers by changing the word *suffi-cient* to the word *reasonable,* to which appellant objected.    There was no error in the modification.*    A "sufficient" time, where the passenger acts with reasonable diligence, is but tantamount to giving the passenger a "reasonable" opportunity to alight. So we do not regard the modification as very material. But the law is that it is the duty of carriers to allow their passengers a reasonable opportunity of getting on and off their trains, and they must stop at stations long enough for that purpose. *St. Louis, I. M. & S. Ry. Co.* v. *Person,* 49 Ark. 188; *Railway Co.* v. *Tankersly,* 54 Ark. 28; *Railway Co.* v. *Lawton,* 55 Ark. 429; *Vancleve* v. *Ry.* 80 S. W. Rep. 707; *Keller* v. *Sioux City & St. Paul Ry. Co.* 37 Minn. 171; *Davis* v. *Chicago & N. W. Ry. Co.* 18 Wis. 175; 4 Elliott, Railroads, §§ 1591, 1628.    A reasonable time is such time as a person of ordinary care and prudence, under the circumstances, should be allowed to take.    *Imhoff* v. *Chicago & M. Ry. Co.* 20 Wis. 244.    It is the duty of the carrier, in determining what is a reasonable time, to take into consideration any special condition peculiar to any passenger, and to the surroundings at the station, and to give a·reasonable time under the existing

---

*Appellant's first and second prayers were as follows:

"1.    You are instructed that carriers of passengers by steam are held to a high degree of care, and are responsible for a very small degree of negligence.    They are bound to use ordinary prudence, caution and foresight to avoid injury to passengers, to provide safe and convenient means of ingress and egress to and from their cars, to stop at stations and to remain stopped a *sufficient* length of time to permit passengers to leave the cars with safety.    When the trains have stopped, and before the passengers have had time to alight, it is their duty to give the passengers notice in some manner of all moves of the train; and if the jury find from the evidence in this case that the defendant has failed in its duty in either of these respects while the plaintiff was a passenger on its train, whereby he was injured, and that this failure was the cause of the injury, your verdict should be for the plaintiff.

"2.    You are instructed that it is the duty of a railroad company to stop its train at the stations where passengers are to debark a *sufficient* length of time, and to hold them still long enough ᶠor them to alight with safety, and that it is the duty of the passengers to leave the train with reasonable diligence after it has stopped.    It is negligence for the carrier to start the train after it has stopped and before passengers have had time to alight. So in this case if you believe from the evidence that on the arrival of the train at Whelen the plaintiff attempted with reasonable diligence to alight, and that while in the act of leaving the train it was started before plaintiff had time to alight,· and that this was the proximate cause of the injury, your verdict should be for the plaintiff."

The court refused to give the first and second instructions, and amended them so as to read that it was the duty of the appellee to stop the train at the depot a *reasonable* length of time to permit passengers to alight, etc., instead of a *sufficient* length of time to permit them to leave the cars.—(Rep.)

circumstances, as they are known or should be known by its servants, for a passenger to get on or off its train.   6 Cyc. 613.

There was no error in instructions numbered three and four given at request of appellee, when considered in connection with instructions numbered three and six given at instance of appellant.*

The first instruction, at the request of appellee, put the burden upon plaintiff, after ·establishing that his injuries were caused by the operation of appellee's train, to show by a preponderance of evidence, that such injuries were caused by appellee's negligence.† This was error under the decisions of this court in *Little Rock & F. S. R. Co.* v. *Payne,* 33 Ark. 816; *St. Louis, I. M. & S. Ry. Co.* v. *Taylor,* 64 Ark. 364; *Tilley* v. *St. Louis & S. F. Ry. Co.* 49 Ark. 535; *St. Louis, I. M. & S. Ry. Co.* v. *Neely,* 63 Ark. 636; *Little Rock & F. S. R. Co.* v. *Blewitt,* 65 ·Ark. 235; *Little Rock & F. S. Ry. Co.* v. *Daniels,* 68 Ark. 171; *St. Louis &*

---

*Appellee's third and fourth prayers were as follows:

"3.   The court charges the jury that the law does not require a railroad conductor, before starting his train, to find out that all passengers desirous of getting off have gotten off; but he is only required to stop his train a reasonable length of tim ᴏ to allow passengers to get off; and when that time has elapsed, he has a perfect right to set his train in motion.

"4.   The court instructs the jury that a reasonable time to alight, as used in the instructions, is such time as is usually required for passengers to get on and off trains at that station in safety."

Appellant's third and sixth prayers were as follows:

"3.   You are instructed that it is the duty of a railroad company, when it stops at a station, to remain still long enough for passengers to alight with reasonable diligence. And in this case if you believe from the evidence that when the station was reached the plaintiff attempted to leave the train with reasonable dispatch, and that defendant's servants knew that he had not alighted, but started the train without notice to him, while he was in the act of alighting, and that such starting of the train was the cause of the injury, your verdict should be for the plaintiff.

"6.   You are further instructed that if the defendant relies upon the defense of contributory negligence, the burden of proof is upon it to show such contributory negligence; and if it fails to do so, you may find for the plaintiff as to this issue."---(Rep.)

†The first instruction given at appellee's request was as follows:

"1.   The court instructs the jury that the mere fact that plaintiff received his injuries from the operation of one of defendant's trains does not establish a cause of action against the defendant; but the proof must, by a preponderance of the evidence, show that the same were due to some act of negligence on the part of said defendant, or to some breach of the ͬ duty that defendant owed to plaintiff at the time; the burden of which is upon the plaintiff."
—(Rep.)

*S. F. Ry. Co.* v. *Cooksey,* 70 Ark. 481. The long established doctrine in this State, under section 6773 of Kirby's Digest, is that where an injury is caused by the operation of a railway train, a *prima facie* case of negligence is made against the company operating such train.    Cases *supra.*    The error in giving this instruction must cause a reversal unless the uncontroverted proof shows that appellant was guilty of contributory negligence.

The appellant had four quarts of whisky. He says he had taken three drinks, and the other proof shows that he was under the influence of liquor. The appellant says that the train was not in motion when he started down the steps, but got in motion just as he went to get off. He says it started off right fast, but that the train likely had not moved a foot when he stepped off. He says: "I suppose I stopped at the door two or three seconds, and spoke to the brakeman." It is thus shown by appellant himself that he stopped at the door as he passed out. How long he stopped is a matter of opinion with him. Another witness testified that Barringer stopped on the steps "three or four seconds." This was also an estimate. But one of appellant's witnesses (Stiffner) details facts which show conclusively that appellant had ample time to debark before the train started, had he moved with reasonable expedition. This witness testified that he saw appellant come out of the cars and down the steps, and while appellant was on a level with the crowd, standing on the ground or on the bottom steps, he saw one Carey, who was also a passenger, assist Mrs. Young and her two children with her bundles on the train. Carey says that the train started up after he had taken this lady and her two children and seated them on the forward car, and after he had put down the bundles and started out. The testimony of Mrs. Young, the lady who was assisted on the train, shows that appellant was on the steps as she got on. The uncontroverted proof then is that appellant stopped at the door of the car, or on the steps, before stepping off, long enough for a passenger to alight from the train himself and assist a lady friend with two small children on to the train to take them and their bundles into the forward car, put down the bundles, and start out before the train started. If three passengers, a lady and two small children had time to get aboard the train and walk to the forward car with their bundles, and get seated before the train started, certainly appellant, who was at the door or on the steps, and had

nothing to do but step off, had reasonable time to do so. Appellant's own evidence shows that the train had just commenced to move, and had only moved about one foot, when he stepped off. He charges in his complaint that appellee negligently started up its train with a sudden jerk, throwing him under the wheels; but his own evidence fails to show this, nor is there any *evidence* to show negligence in the manner of starting the train. His fall, he says, was caused, he supposed, by the train moving and his foot rolling on the gravel, but there is no evidence that the train was started with a sudden lurch, throwing appellant to the ground. True, appellant supposes that he only stopped two or three seconds, and another witness says he stopped three or four seconds. But the evidence of what was actually done by others during that time shows that it was ample to afford appellant an opportunity to debark in safety. This leaves out of view entirely the testimony of several witnesses who say they saw appellant, after the train had stopped, on the ground, and that he attempted to board the car after it had started. Appellant had no baggage or other obstruction to impede his progress, except the whisky. The jury doubtless came to the conclusion that this was too much for him, and brought on all his trouble.

Affirm.

HILL, C. J., (dissenting.) The instructions are erroneous, and the case presented to the jury the wrong theory in a vital matter. The preponderance of the evidence is against appellant; but his testimony, if true, would entitle him to a verdict, and he had the right to have his testimony passed upon by a jury upon proper instructions. It was sufficiently difficult for him to maintain his case with the burden of proof resting upon the railroad; and when the court erroneously put the burden of proof upon him, it destroyed whatever chance he might have had for a recovery. Some of his witnesses contradict him, it is true; but the appellee's witnesses presented an entirely different state of facts from those presented by the appellant's, and it was the right of the appellant to have this conflict passed upon by the jury under proper instructions.

Mr. Justice MCCULLOCH concurs herein.