St. Louis, Iron Mountain & Southern Railway Company *v.*

Fambro.

## Opinion delivered November 9, 1908.

1.  Carriers—injury by moving train—presumption.—Proof that a passenger was injured while attempting to alight from a moving train raises a *prima facie* presumption that the railroad company was negligent, under Kirby's Digest, § 6607.   (Page 18.)

2.  Instructions—relevancy to issues.—It was not error to refuse to give an instruction upon a matter which was not in issue.   (Page 18.)

3.  Same—repetition.—It was not error to refuse to give an instruction asked if the court had already given a correct instruction upon the same subject.   (Page 19.)

4.  Carriers—alighting from moving train—instruction.—An instruction that if plaintiff, suing for injuries received in alighting from a moving train, was informed that the train which she got on did not go directly to her destination but connected at an intermediate point with a train which did go there, she was not justified in leaving the train while it was in motion, was properly refused both because it ignored the fact that she was given contrary information by the ticket agent and by a trainman, and because it was a question for the jury to determine whether she was negligent in attempting to alight from a slowly moving train when she did not know it was moving at all.   (Page 19.)

5.  Same—damages—excessiveness.—A verdict of $500 for damages sustained by a passenger from a fall while alighting from a train was not excessive where she testified that one arm and shoulder were badly skinned, her hip bruised, her knee bruised and sprained, that the leaders in her neck were strained, and she was very sore and suffered much pain as the result of the fall; that the soreness lasted a week or ten days, and it took the bruised places two or three weeks to heal.   (Page 20.)

6.  Same.—A verdict of $500 for damages sustained by a passenger from a fall while alighting from a train was not excessive when she testified that her head was severely hurt by the fall; that she was knocked blind by the force of it; that she received a great nervous shock and was prevented from sleeping for several days; that her body was bruised and her muscles sprained, from which she suffered for a month or two; that she had a severe headache for a week, and had frequent headaches for four weeks or more.   (Page 20.)

Appeal from Miller Circuit Court; *Jacob M. Carter, Judge;* affirmed.

STATEMENT BY THE COURT.

Miss Gussie Fambro and Miss Florence Harkrider, two young ladies residing in Center, Texas, started to St. Louis. They reached Texarkana between eight and nine o'clock on the 14th of August, 1907, and went to the ticket agent of the St. Louis, Iron Mountain & Southern Railway Company, and asked what time a train would leave for St. Louis, and were told that a train then standing upon the track would leave in about five minutes (the train scheduled to· leave at nine o'clock) for St. Louis. They asked if they had time to get tickets and have their trunks checked, and were told that they had. They then purchased tickets for St. Louis, and one of them waited for change and took charge of their grips while the other went to the baggage room and checked their trunks. They met in front of the door of the waiting room, and together went immediately to the Pullman car of the train indicated. There was no train-man at the entrance of the car to assist passengers on the train or to answer inquiries as to where the train went. They boarded it. One of them reached the vestibule, and the other was on the step immediately behind her, and there was a man standing in the vestibule whom they took to be a brakeman. Miss Fambro says he had on a uniform and train cap, and that she took him to be a brakeman, and asked him if that was the train going to St. Louis, and he said "No," and she asked him a second time if it was the train to St. Louis, and he again replied "No;" and she said she had better get off, and he said "Yes," she had better get off. Miss Harkrider says that the trainman in the vestibule of whom they made inquiries was not a ·Pullman por-ter. That he was a trainman, and wore a uniform cap.

Immediately upon being informed that that train was not the St. Louis train, they alighted from it, and in doing so fell, and both were injured. They said that they did not know that the train was moving when they attempted to alight therefrom, and that they got off as carefully as they could. The testimony of all the witnesses is that the train was then moving out of the station. very slowly. The train had gone four or·five car lengths when they fell.

Miss Fambro says that one arm and shoulder were badly skinned, her hip was bruised, and her knee bruised and sprained,

and the leaders in her neck were strained, and she was very sore and suffered much pain as the result of the fall from the train. The soreness lasted a week or ten days, and it took the bruised places two or three weeks to heal. She suffered a mental shock and was badly frightened. She expended $5 for medicines, and was treated by the company's physician at Texarkana and St. Louis.

Miss Harkrider says her head was severely hurt by the fall, that she was knocked blind by the force of it, and it was a great nervous shock to her and prevented her from sleeping for several days; her body was bruised and her muscles sprained, and she suffered from this for a month or more. She had a severe headache for a week, and then had frequent headaches for four weeks or more. She was also treated by the company's physicians at Texarkana and St. Louis.

The facts in regard to the train were these: The train which they boarded went only to Little Rock, leaving Texarkana at nine o'clock P. M., and was due to reach Little Rock at 2:10 A. M.; and another train left Little Rock at 3:40 A. M. for St. Louis. The next train which would have left Texarkana going direct to St. Louis was at 4:05 the next morning. Passengers were in the habit of taking this nine o'clock train for St. Louis and making the change at Little Rock. These ladies brought suit against the railroad company for the personal injuries received. The suits were consolidated and tried together, and they testified as above outlined.

Defendant's testimony tended to prove these facts: That the train was in motion when the young ladies boarded it, and that they hastily and carelessly jumped from it; that it was a Pullman porter, and not an employee of the railroad, who told them that the train was not for St. Louis. The defendant also introduced the testimony of a depot policeman, who said that they asked him if that was the train to St. Louis, and he told them that would be the train, and they could change at Little Rock. They denied ever seeing this man or receiving this information from him or any one else.

The court gave the following instructions:

"1. The court instructs the jury that if you find from a preponderance of the evidence that plaintiff applied to the ticket

agent of the defendant company, as alleged in her complaint, for a ticket from Texarkana to St. Louis; that such a ticket was sold to her by such agent and paid for by her, and that at the time of the purchase of the said ticket the said agent advised plaintiff that her train was then at the depot, and that she would have time to take passage on it, and if you further find from a preponderance of the evidence that the plaintiff, in the exercise of ordinary diligence, proceeded to the train so pointed out to her by said ticket agent, that the door of said train was open, and that plaintiff entered said train for the purpose of taking passage thereon for St. Louis, then you are instructed that plaintiff was a passenger.

"2.   The court instructs the jury that if you find from a preponderance of the evidence that the plaintiff was a passenger, and that she was injured, and that such injuries were caused by a moving train of the defendant, then you are instructed that this is *prima facie* proof of negligence on the part of said company.

"3.   If you find from a preponderance of the evidence that in obedience to the directions of defendant's ticket agent the plaintiff entered the said train for the purpose of taking passage thereon to St. Louis, and that while in the vestibule thereof she was advised by one of the defendant's trainmen in charge of said train that said train was not a St. Louis train and was ordered or directed by said trainmen to get off said train, she had a right to rely upon such advice or direction, provided she took no more risk in getting off the train than a prudent person would have taken under the same circumstances.   And if you further find from a preponderance of the evidence that while in the exercise of ordinary care plaintiff was injured in attempting to alight from said train under such advice of the trainmen, and plaintiff received injuries, then she is entitled to recover.

"4.   If you should find from a preponderance of the evidence that plaintiff was a passenger on said train, as defined in these instructions, then you are instructed that it became and was the duty of the defendant company to exercise for her safety the highest degree of skill, care and diligence which a reasonably prudent person under like circumstances would exercise and which is reasonably consistent with the mode of conveyance and the practical operation of its trains, and for any omission of these

duties whereby injury resulted to plaintiff the defendant would be liable, unless you should find that such injuries were caused or contributed to by the negligence of the plaintiff.

"5. If you believe from the evidence that the plaintiff was injured by reason of the negligence of the defendant company, a recovery cannot be defeated on the ground of contributory negligence, unless it appear from the evidence that the plaintiff herself failed in the exercise of ordinary prudence; and that such failure so contributed to the injury that it would not have occurred if she had been without fault. Contributory negligence will not be presumed, but must be proved by a preponderance of the evidence."

Instructions numbered 6 and 6½ were upon the measure of damages, and need not be set out here.

On behalf of the defendant the court gave six instructions. It is not necessary to set them out, as they presented the defendant's side of the controversy in the way in which the defendant desired it presented; and the court refused seven instructions which were requested on behalf of the defendant.

Miss Fambro recovered judgment for $505, and Miss Harkrider for $500, and the railroad company has appealed.

*T. M. Mehaffy* and *J. E. Williams,* for appellant.

1. The court's second instruction errs in telling the jury that if they found from the evidence that the injuries were caused by a moving train this was *prima facie* proof of negligence of the company. 70 Ark. 481; 85 Ark. 117; 73 Ark. 554.

2. Instruction No. 8 requested by appellant should have been given. If the negligence of appellees contributed to their injuries, they cannot recover, even though appellant's employees were negligent at the same time. Moreover, it is negligence *per se* to attempt to get off a moving car. 59 Atl. 1007; 37 Ark. 526; 46 Ark. 423.

3. The company was not bound to keep watch to prevent persons from attempting to get off its cars while in motion, and a failure to do so was not negligence. The 10th instruction requested should have been given.

4. The gravamen of the case was not the getting on the wrong train, even if appellees were directed thereto, because, at last, the testimony shows that they were not misdirected. The 11th

instruction requested should have been given, as also the 15th, which told the jury that if appellees, after getting on the train, were informed that they could go to St. Louis on that train by a connection at Little Rock, then they were not justified in leaving the train while in motion.

*John N. Cook* and *Scott & Head,* for appellees.

1. There is no error in the second instruction. 83 Ark. 217; 73 Ark. 548; 81 Ark. 276. The Green case, 85 Ark. 117, cited by appellant, is not in point.

2. There is no merit in the contention that the person who told the appellees to get off was not a servant of the appellant, but must have been the Pullman porter. From his dress and the fact that he stood in the vestibule and assumed to give appellees directions, the inference is that he was an employee of appellant; but even if he was in the employ of the Pullman company, appellant would be responsible for his acts. 86 Ark. 208; 48 Ark. 177; 70 Ark. 136; 3 Thompson on Neg. § 3613; 2 Hutchinson on Car., 3d Ed., § 1135.

3. In both the third and fourth instructions given by the court, the burden was placed on appellees to show that a trainman advised or directed them to get off. This court has approved the doctrine that carriers of passengers are held to the highest degree of care and are responsible for the smallest negligence to such passengers. 82 Ark. 504. The fourth was a proper instruction under the facts developed in this case, but even if abstract it was not prejudicial. 83 Ark. 217.

4. There is no error in refusing to give an instruction already covered by another instruction given by the court. In this case the 8th instruction requested by appellant is fully covered by instruction No. 6 given; the question of contributory negligence was properly submitted under instruction No. 5 given at appellees' request, and instructions Nos. 3, 4, 5, 6 and 7 given at request of appellant; No. 9, requested, was covered by Nos. 5, 6 and 7 given at appellant's instance; No. 10, requested, was wholly inapplicable, abstract, and wholly ignores undisputed proof that one of appellant's trainmen directed appellees to get off; the 11th instruction, requested, is, so far as applicable, fully covered by instruction No. 3 requested by appellant and given; and instruction No. 15, requested, is evidently based on the testimony

of the depot watchman. Appellees had the right, and it was their duty, to rely on information given by servants of appellant, rather than that given by some outside party, whose appearance gave no indication of any connection with the company. It is not negligence as a matter of law to leave a train while in motion. 37 Ark. 519; 45 Ark. 256.

HILL, C. J., (after stating the facts). I. The first error assigned is in giving the second instruction, to the effect that if the jury found that the plaintiffs were passengers and were injured, and that such injuries were caused by a moving train of the defendant, this is *prima facie* proof of negligence on the part of the defendant. This presumption is based upon section 6607 of Kirby's Digest. It is insisted that this is not a case for its application, and *St. Louis & S. F. Rd. Co.* v. *Cooksey*, 70 Ark. 481, is relied upon to sustain this position. In that case the plaintiff had alighted from a train and was passing the engine while it was not in motion when an employee of the railroad company, engaged in wetting coal on the tender, carelessly turned the hose so as to throw a stream of hot water on the plaintiff whereby he was severely burned. The court said that the statutory presumption only applies where the injury is caused by the actual running of the train, which was not the case there.

The case of *St. Louis, I. M. & S. Ry. Co.* v. *Green*, 85 Ark. 117, is also cited to sustain this contention; but this presumption was not considered in that case. The court has held this presumption applicable in the following cases, which are indistinguishable from the case at bar: *Barringer* v. *St. Louis, I. M. & S. Ry. Co.*, 73 Ark. 548; *Kansas City So. Ry. Co.* v. *Davis*, 83 Ark. 217; *St. Louis, I. M. & S. Ry. Co.* v. *Stell*, 87 Ark. 308; *St. Louis, I. M. & S. Ry. Co.* v. *Briggs*, 87 Ark. 581.

II. It is next argued that there was error in refusing instructions asked on behalf of the defendant. The 8th instruction stated that contributory negligence was a bar to suits of this character, and that if the plaintiffs, by reason of lack of care on their part, either caused or contributed to produce the injury, the verdict should be for the defendant, even if the proof should show that the defendant was negligent. This subject was fully covered in other instructions given on behalf of the defendant.

The 10th refused instruction stated that the company was

not bound to keep a watch to prevent persons attempting to get off its trains while in motion, and that its failure to do so is not negligence; and that if the plaintiffs voluntarily attempted to get off the moving train because they discovered they were on the wrong train, and were injured thereby, the verdict should be for the defendant. There was no charge of negligence for failing to keep watch to prevent persons attempting to get off trains while in motion, and it was not proper to give an instruction on a matter not in issue. As to whether the conduct of the young ladies in attempting to get off the train was negligence was fully and correctly explained in other instructions.

The 11th refused instruction charged the jury that it made no difference whether the plaintiffs got on the wrong train or not; that such was not charged as a cause of action in the case; and if the employees of the defendant, in the exercise of care, did not anticipate that the plaintiffs were going to get off the train, they were not guilty of negligence, and the verdict should be for the defendant. The third instruction given at the instance of the appellant correctly stated the law on this subject, and in much better form than it was stated in the 11th which was refused.*

The 15th refused instruction told the jury that if they found from the evidence that the plaintiffs were informed that the train that they got on did not go direct to St. Louis but connected with a train at Little Rock that did go to St. Louis, they were not justified in leaving the train while it was in motion.

The depot policeman testified that he told the ladies that this train did not go direct to St. Louis, but connected at Little Rock. There is no other evidence that they were informed by any person of this fact. Their evidence shows that they were informed by the ticket agent that the train did go to St. Louis, and by the brakeman at the entrance to the car that it did not

---

*The third instruction was as follows: "3. The law does not require of the carrier that it do more than try to protect its passengers from dangers which it may reasonably anticipate; therefore if you find from the evidence in this case that the plaintiffs of their own accord negligently jumped off the train while it was in motion, and thereby received the injuries of which they complain, they cannot recover, and your verdict should be for the defendant." (Rep.)

go to St. Louis. The court should not have given an instruction, which in effect was a peremptory one, that if this depot policeman gave them this information they could not recover, in the face of contrary information received from the ticket agent.

In addition to this, the instruction was incorrect in making it negligence, as a matter of law, to leave a moving train. The undisputed evidence is that this train was moving very slowly when these ladies attempted to get off, and they said they did not know it was moving at all; and whether their conduct in leaving it was negligence presented a question of fact for the jury.

III. Finally, it is urged that the verdicts are excessive. The facts testified to by the young ladies as to the extent of their injuries are undisputed, and the jury had a right to accept what they said on the subject; and, accepting their testimony as true, it cannot be said that the verdicts are excessive.

IV. If either the ticket agent or the brakeman had explained to the ladies that they could go to St. Louis on this train by making the change at Little Rock, this accident would have been avoided. Each in a way told the truth, but did not tell the whole truth; and their half-truths amounted to a misdirection to these ladies; and whether their conduct in leaving the train when they did was negligent was a question for the jury to determine. This has been done under proper instructions, and no error is found. The judgments are affirmed.