MISSOURI PACIFIC RAILROAD COMPANY v. GREENE.

Opinion delivered May 14, 1928.

E. B. Kinsworthy and R. E. Wiley, for appellant.

MEHAFFY, J. The appellee filed suit in the Hempstead Circuit Court, alleging that on February 9, 1927, defendant negligently with its train struck and killed plaintiff's bird dog, of the value of $150, at a grade crossing between Hope and Guernsey, Hempstead County. The train was operated in a negligent manner, in that no whistle was blown or bell was rung in approaching the crossing. Defendant was further negligent in maintaining at said point a blind crossing which prevented the dog from being able to see the train until it went on the track, and the killing was due to the maintenance of the

blind crossing and because of earth embankment and trees on the right-of-way.

Defendant answered, denying the material allegations of the complaint. There was a jury trial, and a verdict for plaintiff for $50. Appellant prosecutes this appeal to reverse said judgment. Motion for a new trial was filed and overruled, and exceptions saved.

E. A. T. Creecy testified, in substance, that he and plaintiff were hunting together on February 9, 1927, and, about the time it was getting dark, or about six o'clock, plaintiff's dog was killed by passenger train No. 6. It was on a crossing on a public road running north and south across the railroad track. There is a hill there, and the railroad cuts through the hill, a deep cut with an embankment on each side. One of the dogs was on the side of the railroad that witness and appellee were on, and the other dog was on the other side. Witness saw the dog and the dog saw witness and appellee, and came down the center of the road, and, when he got to the railroad, the train hit him and cut him in two, and killed him. Witness does not know whether the train blew any whistle or rang any bell.

The appellee testified, in substance, that he and Creecy were hunting, about two miles southwest of Hope, and testified to the killing of the dog substantially the same as the witness Creecy. Witness made experiments to see how close, when coming the way the dog was coming, one would have to get to the railroad before he could see the train. He would have to get so close it would be impossible to hardly stop to get off the track before the train got there. Even with a man it would be eight or ten feet from the first rail, and with a dog it would be just practically on the track before he could see the train. There is a curve in the road that comes in kind of southwest, and the dog was coming from the south of the track, going north. Appellee and Creecy were on the north side of the track, and both dogs were on the left-hand side opposite from witness. Appellee heard the train whistle around the curve, and it caused him to

look back and see where his dogs were, and they were back on the left-hand side of the track. He did not hear the whistle after it passed the whistling post. He did not hear the bell ringing. Both dogs came down, and one barely got across the track, and the other got there just in time to collide with the train. He evidently must have missed the cow-catcher, as his head went under the wheels and they cut his head off. Witness did not have time to go back across the tracks and get his dogs. It was impossible to do anything. There is a right-hand curve at the place in the railroad.

C. Cook testified that Greene's dog was worth about $125.

Charles Snodgrass testified that he was running the locomotive pulling train No. 6 on the 9th of February, 1927. Right after the date he had his attention called by the claim department to the fact that a dog had been struck at the crossing between Guernsey and Hope that day. At that time the incidents of that trip were fresh in his mind. At that point the railroad is on an up grade and a curve to the right, and comes through a cut with an embankment on each side across a public road, which also is in a cut with an embankment on each side. It was getting dark when the train reached the crossing, and witness did not see the dogs. As he approached the crossing he was sitting on his seat box, looking ahead on the track and blowing the whistle. That was the proper place. He blew the regular road-crossing whistle for that crossing, and the sound hadn't died away when the front of the engine went over the crossing. The bell was ringing. The bell was turned on at Texarkana and was not shut off until they left Prescott. The locomotive was equipped with an air-ringer, operated by compressed air turned on from a cylinder. When it is started, it rings continuously until you shut it off. That bell rang from Texarkana until they left Prescott. If the dog got on the track when he was nearer than 200 feet to it he would not see it. The headlight would be shining over it. It would be out of his vision. If a dog came on the track

so shortly as to be injured by the wheels behind the pilot, then witness would not see it. The headlight was turned on at Texarkana.

Appellant's contention is that the testimony is insufficient to support the verdict. The statute provides: "All railroads which are now or may be hereafter built and operated in whole or in part in this State shall be responsible for all damages to persons and property done or caused by the running of trains in this State." C. & M. Digest, § 8562.

This statute has been construed by this court many times, and it has been held that the killing of an animal by the operation of a train is *prima facie* proof of negligence on the part of the defendant. And this court, in *St. L. I. M. & S. R. Co.* v. *Fambro,* 88 Ark. 12, 114 S. W. 230, said: "The court has held this presumption applicable in the following cases, which are indistinguishable from the case at bar: *Barringer* v. *St. L. I. M. & S. R. Co.,* 73 Ark. 548 (85 S. W. 94); *Kansas City So. Ry. Co.* v. *Davis,* 83 Ark. 217, 103 S. W. 603; *St. L. I. M. & S. R. Co.* v. *Stell,* 87 Ark. 308, 112 S. W. 876; *St. L. I. M. & S. R. Co.* v. *Briggs,* 87 Ark. 581 (113 S. W. 644).

Many cases have been decided by this court involving the statute above quoted since the cases referred to, and all of them hold that, where it is shown that an injury is caused by a moving train, this is *prima facie* proof of negligence on the part of the defendant. The statute makes the killing of the animal by the operation of the train proof of negligence, and this presumption created by statute is all the evidence of negligence in this case. There is no other proof of negligence.

The engineer testified that he was keeping a lookout on the track; that it was getting dark, and that, if the dog came on to the track closer than about 200 feet to the train, the light from the headlight would be above the dog and he could not see it; that the crossing was in a cut and near a curve.

While the engineer testified that he was on his box looking ahead on the track and blowing the whistle, he

did not testify that he was keeping such a lookout as would enable him to see objects approaching the track or near the track. He says if the dog got on the track when he was nearer than 200 feet he could not see it; the headlight would have been shining over it; but nowhere in his testimony does he say that he was keeping a lookout for objects near or approaching the track. This was a road crossing, and it was the duty of the engineer to keep a lookout not only on the track, as he testified he did, but along the side of the track, so as to ascertain whether any persons or animals were approaching the track, in order that he might take such precaution as was necessary if he discovered any animals approaching the track. It may be, of course, that the engineer was keeping a proper lookout; that he could not see to the side of the track because of the cut or other obstructions, and if he had shown by his testimony that he was keeping a proper and efficient lookout not only on the track but for objects near the track as he approached this crossing, and could not see them, this would have been a complete defense, if the jury had believed his testimony. But the credibility of this witness, as well as all other witnesses, and the weight to be given to their testimony, was for the jury to determine. The evidence of the killing of the animal, which raises the presumption, or, as this court has said before, is proof of negligence, is submitted to the jury, together with all the other testimony offered, and the jury determines the credibility of the witnesses and the weight to be given to their testimony. The instructions given by the court properly stated the law to the jury.

There is no dispute about the condition of the crossing. All the witnesses say that there was a cut and an embankment on the side of the dirt road as well as the railroad.

If the engineer had been keeping a lookout near the track as well as on the track, and had testified either that he could not see the dog, or that he did all that was possible to do after discovering it, it would bring it within

the rule announced by Judge Hill in *Jones* v. *Bond,* 40 Fed. 281, in which he said: "I have, within my judicial experience, tried quite a number of cases for injuries to persons and property, against railroad companies and receivers, from alleged carelessness and negligence on the part of employees operating railroad trains, and have read the opinions of the courts in many more cases, but this is the first dog case that has been brought to my attention, and therefore I am at a loss to know what rule to apply. I presume the reason that other cases of like kind have not been before the courts is that the dog is very sagacious and watchful against hazards, and possesses greater ability to avert injury than almost any other animal; in other words, takes better care of himself against impending dangers than any other. He can mount an embankment, or escape from dangerous places, where a horse or cow would be altogether helpless; hence the same care to avoid injuries to an intelligent dog on a railroad is not required on the part of those operating the trains that is required in regard to other animals. The presumption is that such dog has the instinct and ability to get out of the way of danger, and will do so, unless its freedom of action is interfered with by other circumstances at the time and place."

The appellant in its brief says: "There is no reasonable basis for any inference that a dog which runs into a train after the front end of it has passed by him would have been prevented from so doing by the ringing of a bell upon an approaching train while the train was out of sight of the dog. There is no reasonable ground for imputing to the dog running on a public highway the power of reasoning from a bell ringing that a train was coming which was then out of his sight."

We agree with this statement of the appellant, but, if the engineer had seen the dog and sounded the stock alarm, we think it cannot be said as matter of law that the dog, exercising the ability and watchfulness suggested by Judge Hill, might not have avoided getting killed,

There is no proof in the case as to how far the hill was from the track, and no proof in the case as to whether the engineer could have seen the dog if he had looked elsewhere than on the track. The fireman did not testify, and there is no testimony about the performance of the duty by the railroad company's servants, except the engineer's. And, as we have said, there is no proof of negligence other than the statutory presumption, but a majority of the judges are of opinion that it was proper to submit the question of negligence to the jury, and the finding of the jury is conclusive on us.

The judgment is therefore affirmed.