MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE
*v.* EUBANKS.

4-5875 139 S. W. 2d 413

Opinion delivered April 29, 1940.

*Henry Donham* and *E. W. Moorhead,* for appellant.

*L. B. Smead* and *Rowell, Rowell & Dickey,* for appellee.

MEHAFFY, J. Appellee instituted this action in the Ouachita circuit court alleging that on December 11, 1938, he was driving his truck and trailer north on Tennessee street in the city of Pine Bluff, Jefferson county, Arkansas; he was alone in the truck, which was in excellent running condition, and which was loaded with rice; that as he approached 4th Avenue he came to a complete stop on the south side of the railroad crossing where approximately six tracks run in an east and west direction on 4th Avenue; that on appellee's right was a building occupied by the Martin Machinery Company; that the north side of the building was adjacent to the south track on 4th Avenue and that on said track, directly north of the building, were some boxcars; that left of the appellee was a Missouri Pacific switch engine and crew switching boxcars; that when appellee stopped his truck he looked in both directions and listened for the approach of any trains; he saw no trains approaching and heard none, and then began to proceed north across said crossing on Tennessee street; that as the cab reached the third track a Missouri Pacific passenger train, No. 116, then and there being owned by the appellants and operated by their agents and employees, proceeding in a westerly direction on 4th Avenue at a rate of speed in excess of the ordinances of the city of Pine Bluff, being then in the corporate limits of said city, and without giving any warning by ringing the bell or blowing the whistle, plowed into the cab of the truck and trailer occupied by appellee, knocked the same about 100 feet and completely demolished said truck and trailer; that there were no stationary warning signals or flag-man at the crossing. He alleged that appellant was negligent in that the train was proceeding at a rate of speed in excess of the ordinances and that the appellant's employees failed and neglected to ring the bell or blow the whistle, and that they failed to keep a proper lookout for the safety of others proceeding over said crossing; that appellee

was severely shaken up by the impact; that he caused competent automobile and truck men to make an estimate of the damages, and that the lowest amount was $2,003.57; that appellee has suffered a total loss of his equipment, by virtue of the collision, of approximately $2,003.57; that in addition to the damage of his truck he suffered loss by the damage to the load of rice which he was hauling, and had to reimburse his employers in the sum of $10.74, and that he was forced to pay another operator to finish the delivery of his load at an additional cost to him of $10.80; that his battery was destroyed and he was damaged in the sum of $5.67. He then charges that he was damaged by reason of loss of time, that he was financially unable to replace the equipment, and asked damages in the sum of $2,990.78.

The appellant filed answer admitting that the Missouri Pacific Railroad Company is a corporation and that Guy A. Thompson is the duly appointed and acting trustee; and deny all other material allegations in the complaint. In addition appellant pleads contributory negligence of appellee.

The appellee testified to the facts stated in his complaint and other witnesses testified that the bell was not ringing and the whistle not sounding. The evidence tends to show that if a proper lookout had been kept, appellant's employees operating the train would have discovered appellee's presence in time to have avoided the accident and injury by the exercise of ordinary care.

The operators of the train testified that the bell was ringing, but the whistle was not sounding, and testified they were keeping a lookout. The engineer, however, could not see the appellee, and the fireman testified that he saw him and paid no attention for a while because he thought he would stop, and then notified the engineer who could not stop the engine in time to avoid the injury after the fireman called to his attention the situation of appellee.

There was a verdict and judgment in favor of appellee for $1,750. Motion for new trial was filed and overruled, and the case is here on appeal.

The questions as to whether a proper lookout was kept, and whether the bell or whistle was sounded, were questions for the jury; there being substantial evidence to sustain this finding, its finding is conclusive.

Section 11153 of Pope's Digest, known as the Comparative Negligence Statute, has no application because this case was tried under § 11144, a statute commonly known as the Lookout Statute. That section provides that it shall be the duty of all persons running trains to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of an employee of any railroad to keep such lookout, the company owning or operating any such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care after the discovery of such peril, and the burden of proof shall devolve upon such railroad to establish the fact that this duty, to keep such lookout, has been performed.

The engineer in this case testified that the situation was such that he could not see, but the fireman testified that he was keeping a lookout straight ahead, evidently looking straight down the track.

The lookout statute has been construed by the court many times, and we recently said: "This was a road crossing, and it was the duty of the engineer to keep a lookout not only on the track, as he testified he did, but along the side of the track, so as to ascertain whether any persons or animals were approaching the track, in order that he might take such precaution as was necessary if he discovered any animals approaching the track." *Mo. Pac. Rd. Co.* v. *Greene,* 177 Ark. 217, 6 S. W. 2d 26.

The court instructed the jury that it was the duty of all persons running trains in this state upon any railroad to keep a constant lookout for persons or property upon the track of any and all railroads. This lookout necessarily meant, as we have heretofore decided, that the persons operating the engine should keep a lookout not only on the track, but near the track, so that they might be able to discover the approach toward the track of any person.

The question of whether any lookout was kept, was submitted to the jury under proper instruction. The question also of whether the operators sounded the alarm, as required by statute, was properly submitted to the jury.

The appellant argues at length that the appellee was guilty of contributory negligence, but under the statute above quoted, his contributory negligence is not a defense if the injury was caused by failing to keep a lookout, as the law requires.

The statute involved in this case has been construed by this court so often that we do not think it necessary to discuss all of the authorities cited by the parties. It has been uniformly held that if persons operating a railroad train fail to keep the lookout required by the statute, where if such lookout had been kept, the injury could have been avoided by the exercise of ordinary care, the company is liable and the negligence or contributory negligence of the injured party is not a defense.

We have carefully examined all the instructions, and have reached the conclusion that the court did not err either in giving or refusing instructions.

The appellant, however, insists that the verdict is excessive, and in this contention we agree with appellant. The jury found in the sum of $1,750 in favor of appellee. There was considerable evidence as to the value of the truck, but the evidence shows that this truck was three years old and had been operated 30,000 miles before the accident. Mr. Wilcox, a witness, testified that he was a salesman for the Pines Motor Company and handled

trailers and trucks of the kind here involved; he saw the equipment and knew of the operations in which Mr. Eubanks was using it; knew that it was in good condition; knew the market value and testified that that market value would be about $1,055. This, in view of the fact that the undisputed evidence shows that it was a second-hand truck and had been used three years, appears to us to be the nearest approach to the actual market value of the truck. The undisputed evidence shows that the rice was damaged in the sum of $10.74, and that appellee had to pay the owners this amount; that it cost him $27.50 and $10 and some cents to carry the load to its destination. This amounts to approximately $1,104 which we have concluded is the largest sum to which appellee is entitled, under the evidence.

We find no other errors in the case, and if the appellee will, within 15 days, enter a remittitur down to $1,104, the judgment will be affirmed for that amount. Otherwise, it will be reversed and remanded for a new trial.