## THOMPSON v. CARLEY.

### No. 12676.

Circuit Court of Appeals, Eighth Circuit.

Feb. 14, 1944.

Harry L. Ponder, of Walnut Ridge, Ark. (Thomas B. Pryor, of Fort Smith, Ark., on the brief), for appellant.

S. L. Richardson, of Walnut Ridge, Ark. (Frank Sloan, of Jonesboro, Ark., on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an appeal by Guy A. Thompson, Trustee of the Missouri Pacific Railroad Company, defendant, from a judgment for damages for personal injuries recovered by Eddie Carley. The complaint alleges that plaintiff was struck by defendant's train and injured while walking between the rails of the railroad track; that defendant was negligent in the operation of its train in that its employees failed to warn plaintiff of its approach; that the train was operated at an excessive rate of speed, and that by keeping a proper lookout defendant's employees could have discovered plaintiff's peril in time to have avoided injuring him.

In its answer, the defendant specifically denied each and every allegation of negligence, alleged contributory negligence of plaintiff as a complete defense, alleged plaintiff was a trespasser, and, by amendment alleged that plaintiff's intoxicated condition contributed to his injuries.

The judgment was rendered for plaintiff by the district court, sitting without a jury, and the controlling question is whether the evidence was sufficient to sustain the recovery under the provisions of the Arkansas "Lookout" statute, Section 11144, Pope's Digest, which reads as follows:

"Duty of trainmen—burden of proof. It shall be the duty of all persons running trains in this State upon any railroad to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employee of any railroad to keep such lookout, the company owning or operating any such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care after the discovery of such peril, and the burden of proof shall devolve upon such railroad to establish the fact that this duty to keep such lookout has been performed."

Defendant maintains a system of trackage extending in a general north and south direction through the town of Hoxie in Arkansas. The accident occurred in the southern part of the town where defendant has three parallel tracks separated from one another by a distance of seven feet. The passing track is in the middle and those on the outside are main line tracks. U. S. Highway No. 67 is located about 60 feet to the west of the tracks and parallels them. The business district of Hoxie is also to the west, and plaintiff's home is east of the tracks. The cafe of Joe Richardson lies slightly below Hoxie's main business district and between the highway and railroad tracks.

Plaintiff was the only witness to the accident. According to his own account, he left the Richardson cafe, where he had been drinking beer, at about one a.m., on November 5, 1941, and started home down the highway. It was cloudy, misting and "sort of" foggy. Plaintiff is approximately six feet tall, and was dressed in a yellow or light brown hunting jacket and trousers. After traveling along the highway for three blocks, he turned eastward toward the tracks, walked across a log eight inches in width spanning a ditch adjacent to the railroad right-of-way, and proceeded south

along the edge of the west main track for about two blocks before cutting diagonally across the tracks in a southeasterly direction. He passed over the west main track and the passing track and then turned down the middle of the east main track. Before crossing the west tracks he had looked to the north without seeing headlights or anything to indicate to him the approach of a train, but did not look back prior to walking down the middle of the east main track. After walking 75 to 100 feet he heard the noise of wheels on the rails and glanced back. When he first saw the train it was 15 feet to the north and traveling about 35 miles per hour. He saw no headlights, but was not prepared to state that the dim lights were not on. No warning whistle or bell was sounded to apprise him of impending danger. He attempted to jump from the track but was struck by the train and knocked unconscious before he could get clear. A swing brakeman on a train traveling in the opposite direction at about the time of the accident testified that he heard a noise, looked around and saw Carley "lying just off the track with his head south and his feet to the north, parallel with the tracks at the end of the ties. He [Carley] was on the east side of the east track lying on his stomach." Both of Carley's arms were broken and his shoulder blade injured.

The engineer and fireman of the train which struck Carley were not aware of the accident. Their testimony is to the effect that they were "dragging along" at about eight to ten miles an hour under block signals to permit an approaching train to get into clear on the passing track and that this was their train's speed at the place of the accident. That the engine was equipped with regular lights (1500 candlepower), which were burning brightly, and two additional green lights; that a whistle was blown and a bell sounded at the site of the accident; that they kept a good lookout; that the night was foggy and misty; that if Carley had been standing on the track they could have seen him for a distance of 150 to 200 feet with the headlights burning brightly, and from 50 to 75 feet with the lights dimmed, but that they could not have seen him until they were extremely close if he had been lying near the track.

The trial court's findings included the following:

"4. On the night of November 4th, 1941, or early morning of November 5, 1941, the plaintiff, Eddie Carley, was a trespasser upon the tracks of the railroad operated by the defendant Trustee, and was at that time struck by a train operated by the agents, servants or employees of the defendant Trustee, and was severely injured by said striking.

"5. The plaintiff, Eddie Carley, was upon said tracks in plain sight of the engineer and fireman of the train which struck him, and the said engineer and fireman * * * could have seen him and should have seen him, had they been keeping a lookout as required by the Statutes of Arkansas.

"6. The engine pulling the train which struck and injured the plaintiff, Eddie Carley, was properly equipped with an electric headlight of more than fifteen hundred candlepower, which would have sufficiently lighted up the track for said agents * * * to have discovered the plaintiff in a place of danger, had they kept a proper lookout as required by the Statutes of Arkansas.

"7. The * * * engineer and fireman * * * did not keep a proper lookout as required by the Statutes of Arkansas, and their failure to keep such lookout was the direct and proximate cause of the injury to the plaintiff, Eddie Carley.

"8. The plaintiff, Eddie Carley, was severely and permanently injured by reason of the negligence of the agents, servants and employees, in failing to keep a proper lookout, as required by the Statutes of Arkansas, aforesaid."

On this appeal defendant contends that plaintiff failed to establish facts which would give rise to a reasonable inference that a lookout had not been kept, that the great preponderance of the testimony introduced established beyond question that a lookout was actually kept, that the sole and proximate cause of plaintiff's injuries was his own negligence, and that the trial court erred in admitting testimony as to the results of an experiment concerning visibility.

The Arkansas "Lookout" statute has been passed upon by the Supreme Court of Arkansas many times. Under the statute a duty is placed upon persons operating a railroad train to maintain a constant and efficient lookout for persons upon the tracks. If failure to do so results in injury to a person upon the tracks where the maintenance of a proper look-

out would have resulted in the discovery of a person's peril in time to have prevented the injury to him, the company is liable in damages for the injury. Recovery is not barred in such a situation, notwithstanding the person was guilty of contributory negligence in going upon the tracks, was intoxicated, or was a trespasser. While it is true that mere proof of an injury to a person does not create a presumption that the railroad's employees were negligent, and does not place upon the company the burden of negating its negligence, the introduction of testimony which is not speculative or conjectural and which warrants the reasonable inference that the danger could have been discovered and averted had the lookout required by law been maintained, burdens the company with the task of showing by a preponderance of evidence that such a lookout has been maintained. It is liable to the injured party when it fails to do so. Missouri Pacific Railroad Co. v. Manion, 196 Ark. 981, 120 S.W.2d 715; Missouri Pacific Railroad Co. v. Eubanks, 200 Ark. 483, 139 S.W.2d 413; Missouri Pacific Railroad Co. v. Ross, 194 Ark. 877, 109 S.W.2d 1246; St. Louis-San Francisco Ry. Co. v. Gilstrap, Ark., 174 S.W.2d 941; Missouri Pacific Railroad Co. v. Nelson, 195 Ark. 883, 115 S.W.2d 872; Missouri Pacific Railroad Co. v. Severe, 202 Ark. 277, 150 S.W.2d 42; St. Louis-S. F. Ry. Co. v. Hill, Adm., 197 Ark. 53, 121 S. W.2d 869; St. Louis, etc., R. Co. v. Gibson, 113 Ark. 417, 168 S.W. 1129.

It is our opinion that the testimony and physical circumstances surrounding the accident were not such as to compel the trial court to find that a proper lookout was maintained. We think the trial court was justified in concluding from the evidence that the defendant had failed to show that a proper lookout, as required by the statute, was kept. It is undisputed that the three tracks were straight, level and free from obstruction so as to enable the engineer and fireman to see the track for a considerable distance ahead. The fireman testified that despite the unfavorable atmospheric conditions a person could have been seen upon the track for 150 to 200 feet. If the train was "dragging along" under slow speed so that the movement of the train could be governed by signals,

it is reasonable to suppose that the enginemen by maintaining a proper lookout, would have been able to discern the plaintiff as his figure came within the range of the headlight in time to have seen him and avoided the accident by giving him a timely warning. As the trial court pointed out, "if these people had on this engine the lights as required by law, there is no reason in the world why they should not have discovered this man." Moreover, plaintiff's testimony that he was struck by the engine while walking down the middle of the track finds some corroboration in the position in which his body was found after the accident and the nature of the injuries inflicted upon him.

Defendant stresses St. Louis-San Francisco Ry. Co. v. Gilstrap, Ark., 174 S.W. 2d 941, as being in his favor, but the facts there involved are readily distinguishable from those in the instant case. There the person struck by the train was found killed. There was no witness able to testify to circumstances and facts from which a reasonable inference could be drawn that decedent's peril could or would have been discovered and averted by the operators of the train if a proper lookout had been kept. The Arkansas court pointed out that the mere finding of the mutilated body of a trespasser under conditions justifying the belief that he had been hit by a train was not alone sufficient to make the provisions of the "Lookout" statute applicable, and that testimony sufficient to raise a reasonable inference of failure to maintain the required lookout was not furnished. In the instant case such testimony was produced since the plaintiff was able to testify in detail as to the facts and manner of the accident, the surrounding physical data and other pertinent matters from which an inference of negligence under the statute was warranted.

■ While the plaintiff's story was contradicted by the assertions of the engineer and fireman that they had maintained a proper lookout, and such testimony should not be arbitrarily rejected,[1] it was the duty of the trial court to evaluate the reasonableness or unreasonableness of the testimony and to judge the credibility of the witnesses in the light of the physical facts surrounding the accident. We do not

[1] Missouri Pac. Ry. Co. v. McAlister, 205 Ark. 179, 168 S.W.2d 616, 618; St. Louis-San Francisco Ry. Co. v. Gilstrap, supra; Missouri Pac. R. Co. v. Penny, 200 Ark. 69, 137 S.W.2d 934, 936.

find error in his acceptance of the plaintiff's testimony as supported by the physical facts in evidence.

■ We have pointed out that neither the plaintiff's possible intoxicated condition, nor the fact that he was a trespasser prevents his recovery under the "Lookout" statute if a right to recovery thereunder is otherwise established. While his conduct might not be such as to entitle him to recover under different circumstances, the controlling question confronting this court is whether the trial court properly awarded the plaintiff a judgment under the statute, and we conclude that the trial court did not err in finding that the engineer and fireman did not keep a proper lookout as required by the statute, that the plaintiff could have been seen had a proper lookout been maintained, and that the failure to keep such a lookout was the direct and proximate cause of the injury to the plaintiff.

■ Defendant assigns as error the admission of the testimony of plaintiff's witnesses Green and Sullens as to the results of an experiment conducted by them with respect to the distance plaintiff could be seen on the track in the nighttime by the light of a locomotive headlight, which was objected to on the ground that on the night of the experiment the conditions affecting visibility were not the same as on the night of the accident. Green testified that it was a cloudy night and there was no moon. He was 100 steps north of the plaintiff who had assumed the position he occupied the night of the accident and could see him remove his hands from his pockets and could recognize him. Sullens said plaintiff was plainly visible. In view of the fact that the trainmen stated that they could have seen the plaintiff from 150 to 200 feet ahead of the train with bright lights burning, or from 50 to 75 feet with the lights dimmed, the admission of the challenged testimony, if it was incompetent, would not entitle the defendant to a reversal of the judgment. At the trial, the court stated that it would let the testimony go in for what it was worth, and there is nothing in the record to show that any finding of fact was based upon that testimony.

■ In a nonjury case, the presumption is that the trial court considered only the competent evidence and disregarded all evidence which was incompetent. Unkle v. Wills, 8 Cir., 281 F. 29, 34; John-

son v. Umsted, 8 Cir., 64 F.2d 316, 318; Garden City Feeder Co. v. Commissioner, 8 Cir., 75 F.2d 804, 807; Wade v. Blieden, 8 Cir., 86 F.2d 75, 77; Hedrick v. Perry, 10 Cir., 102 F.2d 803, 808. In Donnelly Garment Co. v. National Labor Relations Board, 8 Cir., 123 F.2d 215, 224, we said: "If the record on review contains not only all evidence which was clearly admissible, but also all evidence of doubtful admissibility, the court which is called upon to review the case can usually make an end of it, whereas if evidence was excluded which that court regards as having been admissible, a new trial or rehearing cannot be avoided." This Court will not reverse a trial court in a nonjury case for having admitted incompetent evidence, whether objected to or not, unless all of the competent evidence is insufficient to support the judgment appealed from or unless it affirmatively appears from the record that the incompetent evidence complained of was relied upon by the trial court and induced the court to make an essential finding which would not otherwise have been made. Compare Kauk v. Anderson, 8 Cir., 137 F.2d 331, 334.

Affirmed.