MILTON v. JEFFERS.

Opinion delivered July 10, 1922.

1. WILLS— CAPACITY OF TESTATOR—EVIDENCE.—Evidence *held* to sustain a finding that a will was the act of one mentally incapable of making it.

2. WILLS—UNDUE INFLUENCE—QUESTION FOR JURY.—Evidence *held* not to warrant submission to the jury of the question of undue influence in procuring the execution of a will.

3. WILLS—UNDUE INFLUENCE DEFINED.—Fraud or undue influence which will avoid a will is not the legitimate influence which springs from natural affection, but the malign influence which results fear, coercion or any other cause that deprives the testator of his free agency in the disposition of his property; and this influence must be specially directed toward the object of procuring a will in favor of particular parties.

4. TRIAL—INSTRUCTION INVADING JURY'S PROVINCE.—In a proceeding to probate a will, an instruction that "mental powers decline with advancing years" invaded the jury's province.

5. WILLS—STATEMENT OF TESTATOR'S WIFE HELD INADMISSIBLE.—In a proceeding to probate a will where the issue of undue influence was raised, evidence that testator's wife advised him to make his will and that his sons, the proponents, knew best, was inadmissible; there being no evidence of a joint undertaking between proponents and testator's wife to induce the making of a will.

6. WILLS—STATEMENTS OF TESTATOR.—In a will contest the statements of the testator are competent only to show his mental status, but not to show an independent fact, such as undue influence or fraud.

Appeal from Franklin Circuit Court, Ozark District; *James Cochran*, Judge; reversed.

*Hill & Fitzhugh,* for appellants.

The court erred in not directing a verdict for appellant and in failing to set aside the verdict of the jury as being against the weight of the evidence. 126 Ark. 427. The evidence does not sustain the contention of mental incapacity when measured by the rule laid down in 49 Ark. 367 and repeated in 114 Ark. 69. Old age and physical infirmities alone are not sufficient to establish a "partial eclipse of the mind." The circumstances de-

tailed in 66 Ark. 623 made a stronger case of mental incapacity than the present one, yet the will there was not set aside.

There was no testimony whatever of undue influence on the part of appellants over their father, and it was error to submit that issue to the jury. 122 Ark. 407. The undue influence which is required to avoid a will must be directly connected with its execution. There was none shown. 49 Ark. 367; 87 Ark. 148; 94 Ark. 176. Neither courts nor juries can arbitrarily disregard undisputed, unimpeached, disinterested witnesses, but when done it is the duty of this court to set aside the verdict. 101 Ark. 532; 53 Ark. 96; 67 Ark. 511; 80 Ark. 396.

*Willard Pendergrass, June P. Clayton* and *Evans & Evans,* for appellees.

Instruction No. 9 given by the court correctly defined senile dementia according to the text-books and cases. Gardner on Wills, sec. 43, p. 125; 2 Clevenger's Med. Juris. of Insanity 910. *Beaver* v. *Sprangler,* 93 Iowa 576; 61 N. W. 1072; *Davis* v. *Denny,* 94 Md. 390; 50 Atl. 1037. See also 145 Ark. 247.

The declarations of the father, both before, at the time of the execution of the will and after, were admissible for the purpose of enabling the jury to pass upon his mental capacity and his susceptibility to undue influence. 122 Ark. 407; 115 Tenn. 73; 5 A. & E. Ann. Cas. 601, 3. L. 8 A. (N. S.) 749 and note, citing a number of cases.

The court did not err in submitting to the jury the question of undue influence. Gardner on Wills, sec. 63, p. 192; 13 S. W. 1098.

*Hill & Fitzhugh,* for appellant in reply.

Instruction No. 9 was clearly erroneous in that it was an expression of an opinion by the court on the weight of the evidence. The instruction is practically a copy of a statement in Gardner on Wills, sec. 43, p. 125, but the statement is not sustained by either of the court

decisions cited by him. There is no presumption against a will because made by a person of advanced age, and incapacity cannot be inferred merely from an enfeebled condition of mind and body. 3. Witthaus & Becker on Med. Juris, p. 406 and cases cited. 1 Wharton & Stille's Med. Jur. sec. 975.

McCulloch, C. J. Appellants were the proponents of the last will and testament of W. C. Milton, and they have prosecuted an appeal from the judgment of the circuit court of Franklin County sustaining a contest of the will by appellees.

The instrument in controversy was executed by W. C. Milton on January 26, 1918, and he died on June 11, 1920. Appellants are the three sons of the testator, and appellees are his two daughters.

By the terms of the will, the testator gave the whole of his estate to his wife Eliza, and gave the remainder of his real estate at the wife's death to his three sons to the exclusion of the daughters, and gave to all of the children an equal part of the remainder of the personal property after the death of testator's wife.

The testator was the owner, at the time of his death, of a farm, on which he resided, of the value of about $12,000, and he left personal property of the aggregate value of about $1,200.

The testator's wife died after the execution of the will, and prior to the death of the testator.

Appellees allege that at the time of the date of the will the testator was not of sufficient mental capacity to make a will, by reason of the fact that his mind, on account of age, had been reduced to a state of senile dementia, and also allege that the execution of the will by the testator was induced by coercion and undue influence of the three sons, who were the chief beneficiaries under the will. The issues were joined upon these two allegations, and, as before stated, the verdict and judgment resulted in favor of the contestants.

It is undisputed that the testator was a farmer and was about ninety-two years old at the time of the execu-

tion of the will. He had been a strong man, both phys-
ically and mentally, all of his life, and it is conceded that
much of his physical and mental vigor were preserved up
to the time of his death. But the contention of ap-
pellees was, at the trial below, that on account of old
age his mental vigor had been reduced to the extent that
he was incapable of disposing of his property. There
was much testimony introduced by appellants to the con-
trary, tending to show that the testator remained in full
and complete possession of his mental faculties up to the
time of his death, and that he was capable of executing
the testament. The court submitted both of the issues
to the jury as to his mental capacity and undue influence.
Appellants requested the court to give a peremptory in-
struction, contending that the evidence was insufficient
to submit either of the issues, and they also contend, es-
pecially in regard to the issue of undue influence, that
there was no evidence to sustain the finding and that the
court should not have submitted that issue to the jury.
Objections were made to the instruction submitting the
issue of undue influence.

Several witnesses introduced by appellees testified
that the testator was weak-minded and childish on ac-
count of his advanced age, and they gave instances of
forgetfulness on his part and of childish acts and con-
duct. Witnesses also testified to conversations with the
testator about the time of the execution of the will, in
which he stated that he wanted his children to share equal-
ly in his estate. Many witnesses were introduced by
appellants, nearly all of them being men of prominence
in the community, who had been acquainted with the
testator a great many years, and they all testified that he
was a man of strong mentality and positive convictions,
not easily led away—in other words, that up to the time
of his death he was a quiet, determined man with strong
convictions, and in complete possession of his mental
faculties. We cannot say, however, that there is an en-
tire absence of testimony of a substantial nature tending

to show that at the time of the execution of the will the testator did not have sufficient mental capacity to execute the will. Considering his extreme old age and his physical condition, as described by some of the witnesses, together with his forgetfulness in regard to ordinary transactions, and the opinions of those witnesses, given in connection with these circumstances, we think there is enough to warrant the inference that the testament was not the act of one mentally capable of making it.

Our conclusion is, however, that there is absolutely no testimony in the record justifying the submission of undue influence on the part of appellants in procuring the execution of the will. The circumstances concerning the execution of the will are undisputed, and are detailed by L. R. A. Wallace, then a practicing lawyer at Ozark, the county seat of the county wherein the testator resided. Judge Wallace testified that he had been acquainted with the testator for many years, though he had had few business transactions or conversations with him. He testified that in January, 1918, the testator came to his office in Ozark and requested him to prepare his will, and gave him the data from which the will was to be framed. Witness stated that he made memoranda of the statements of the testator, and informed him that he would prepare the will and send it to him by mail. He stated that he prepared the will, in accordance with the directions of the testator, and sent it out by mail, and that a short time thereafter—not more than two weeks, and perhaps only a few days—the testator came back to the office with the will and expressed himself as being satisfied with it, and that they went to a business house in Ozark and requested two business men there to witness the will. The witnesses were both men who had known the testator for a great many years, and both of them, as well as Judge Wallace, testified that the testator was, to all appearances, in his usual mental state and fully capable of understanding the will and executing it.

There is no testimony at all tending to show that either of the appellants had requested the testator to make the will in their favor or that they resorted to any kind of influence or device to induce the execution of the will. The evidence shows that appellants, the three sons of the testator, were men in middle life and were engaged in different kinds of business, and at times some of them looked after their father's business, particularly the youngest son, Walker. The evidence also shows that the relation between the testator and all of his children were most cordial. We are therefore unable to find any testimony at all tending in the slightest degree to show that the execution of the will was induced by improper influence. The law on this subject, so far as necessary to invoke it in the present controversy, is very well settled by decisions of this court. The rule on that subject, as announced by this court in *McCulloch* v. *Campbell,* 49 Ark. 367, and approved in later cases, is as follows:

"The fraud or undue influence which is required to avoid a will, must be directly connected with its execution. The influence which the law condemns is not the legitimate influence which springs from natural affection, but the malign influence which springs from fear, coercion or any other cause that deprives the testator of his free agency in the disposition of his property. And the influence must be specially directed toward the object of procuring a will in favor of particular parties. It is not sufficient that the testator was influenced by the beneficiaries in the ordinary affairs of life, or that he was surrounded by them and in confidential relations with them at the time of its execution."

In the case of *Miller* v. *Carr,* 94 Ark. 176, Judge BATTLE, delivering the opinion of the court and applying the rule announced in *McCulloch* v. *Campbell, supra,* said: "It was necessary for them (contestants) to show that the will was procured by undue influence, that is to say, the undue influence that will avoid a will must be di-

rectly connected with its execution, must be the procuring cause.''

The error of the court in submitting this issue to the jury necessarily calls for a reversal of the judgment, for we have no means of determining upon what issue the verdict of the jury was based.

It is also insisted that the court erred in giving, at the request of the contestants, instruction No. 9, which reads, in part, as follows: ''Senile dementia is a form of insanity peculiar to aged people, marked by a decay of the mental faculties, and in consequence of which testamentary capacity may disappear. Old age is not inconsistent with testamentary capacity. But, as a general thing, the mental powers decline with advancing years, and when the insanity characteristic of and peculiar to old age appears—and this is what is meant by senile dementia—testamentary capacity cannot longer exist.''

This instruction stated to the jury as a fact that ''mental powers decline with advancing years,'' and this was tantamount to an instruction on the weight of the evidence. It is a matter of common knowledge that generally, or, at least, frequently, mental powers decline in a more or less degree with advancing age, but it is not always true, and it is a question of fact in a given case for the determination of the trial jury. A trial court in this State, which is prohibited from instructing on the weight of the evidence, should not tell the jury that, as a matter of fact, ''mental powers decline with advancing years,'' for this could only be interpreted by the jury as a statement of a fact by the court, and that their only province was to determine the extent to which the testator's mental powers had declined. The jury should have been left free, without intimation from the court, to decide whether or not, notwithstanding the testator's advanced age, there had been any substantial decline in his mental faculties.

Learned counsel for appellees rely upon statements of eminent text-writers and of judges in delivering opin-

ions as to the theory advanced by the court in this instruction. Such discussions and statements are appropriate in opinions of courts and in text-books, which are discussions of facts in determining the weight of evidence, but where it is the exclusive province of the jury to determine the weight of the evidence, the court has no right to undertake to state the facts, or the weight of the evidence, to the jury.

There is another assignment of error, which will be mentioned in view of the fact that the case will be reversed for a new trial. Appellees introduced as a witness J. R. McGee, who testified, over the objection of appellants, concerning a conversation between the testator and his wife, about the time of the execution of the will. He testified that he was living at the house of the testator, and that he noticed the envelope in which the will was received by mail by the testator, and that the testator read the instrument to him. He testified to the following conversation between the testator and his wife:

"Mrs. Milton asked, 'Are you going to town today?' She said, 'You had better go while I am well and fix up those papers. Wallace and Eddie (referring to the two sons, W. G. Milton and E. B. Milton) know best.' He looked out and said: 'How can I go? Yonder goes the buggy.' "

The objections of appellants were to the statements of Mrs. Milton to her husband, and we are of the opinion that those statements were incompetent. They had no bearing upon the mental capacity or incapacity of the testator, and they had no tendency to establish undue influence on the part of appellants to induce the execution of the will. If there had been any testimony at all tending to show undue influence by appellants, or a joint undertaking between Mrs. Milton and appellants to induce the testator to make the will, then the statements of Mrs. Milton to the testator might have been competent as tending to show an exertion of influence in connection with her three sons, but, as before stated, there is no

evidence tending to show any influence by the sons, and these statements of the mother were without effect in that direction. The statements of the testator himself were only competent to show his mental status, and not for the purpose of establishing an independent fact such as undue influence or fraud. *Mason v. Bowen*, 122 Ark. 407.

For the errors indicated, the judgment will be reversed and the cause remanded for a new trial.