HIGH v. SHARP.

Opinion delivered November 3, 1924.

WILLS—INSTRUCTION.—It was prejudicial error to give an instruction that allowed the jury to determine from the evidence whether all of the requirements of Crawford & Moses' Dig., § 10494, in regard to the execution of a will, had been complied with, when the undisputed evidence showed that three of the five requirements therein mentioned had been complied with.

Appeal from Washington Circuit Court; *W. A. Dickson*, Judge; reversed.

*John Mayes*, for appellants.

There is no substantial evidence to sustain the verdict, but only bare inference. 154 Ark. 228. The undisputed evidence shows positively that the will was executed and signed as required by law. The appellee

has failed to meet the burden resting upon him to show that the will was procured by undue influence; that is to say, the undue influence that will void a will must be directly connected with its executor, must be the procuring cause. 94 Ark. 176; 49 Ark. 367; 154 Ark. 516. Since there was no evidence to show that the will was not properly executed and that there was undue influence exercised, it was error to submit these questions to the jury. 156 Ark. 309.

*Nance & Seamster,* for appellees.

Appellants can not complain of the submission to the jury of the question of undue influence, since he failed to object to the court's instructions on the subject. 157 Ark. 225. Where the mental capacity of the testatrix and undue influence as a factor are issues in the case, a wide range of inquiry is permissible. These elements must be considered together, and the matter was submitted to the jury under proper instructions. 29 Ark. 151; 31 Ark. 306; 74 Ark. 212. A total deprivation of reason and understanding is not necessary to constitute incapacity. 17 Ark. 292.

WOOD, J. On the 21st of September, 1922, in Washington County, Arkansas, Louisa Webb executed what purported to be her last will and testament. By this will she gave and bequeathed to her two grandchildren, Wilma Aline Webb and Thelma Lorene Webb, $150 each; and to her two daughters, Mrs. Effie Goree and Mrs. Lillian High, she bequeathed all of the remainder of her property, real and personal, wherever located. The testatrix died on the 27th of November, 1922. The will was duly probated and admitted to record by order of the probate court on December 4, 1922. On March 5, 1923, J. S. Sharp was duly appointed guardian for Wilma and Thelma Webb, minors. As such guardian, Sharp petitioned the probate court for an appeal from its order probating the will. In his petition he alleged, among other things, that the will was probated in common form without notice to affiant or his wards, and without appointing a guardian *ad litem* to represent them;

that the testatrix, Louisa Webb, at the time of the execution of the alleged will, did not have sufficient mental capacity to make a will, and also that William High, the husband of Lillian High, one of the principal legatees, exercised an undue influence over the testatrix and thereby caused her to give the major portion of her estate to his wife and her sister, Mrs. Effie Goree. He prayed for an appeal from the order of the probate court probating the will to the circuit court. His petition was duly verified, and the petition was granted and the cause appealed to the circuit court.

The cause was heard *de novo* in the circuit court before a jury, upon the evidence adduced upon the issues raised by the allegations of the petition. The proponents offered in evidence the record of the will and the probation thereof in the probate court. They also introduced witnesses who testified that they had witnessed the execution of the will by the testatrix; that they were present as witnesses at the request of William High, who told them that Mrs. Webb desired them to be present and witness her will; that the instrument was read and explained to Mrs. Webb by Judge Berry, who prepared the same, and that the same was signed by her in their presence.

Judge Berry testified that he was told by Mrs. High and Mrs. Goree, a week or more before the will was executed, that their mother wanted him to come out and write her will. High also talked to him about it the day before the will was signed. Witness prepared the will and read and explained it to Mrs. Webb, and she said it was all right. She signed it in witness' presence. She stated that she could not write her name very well with a pen, and asked if she could sign it with a pencil. Witness told her that she could sign it with a pencil, and he would trace it with ink. She signed the instrument with a pencil, and witness traced her signature with ink, and showed it to her after it was done.

Testimony was adduced on behalf of the contestants on the issues as to whether Mrs. Webb had suf-

ficient mental capacity to make the will, and also as to whether any undue influence had been brought to bear upon her by Lillian High to induce her to make the will. Testimony was also adduced on these issues by the proponents in rebuttal.

On its own motion the court instructed the jury in instruction No. 1, defining the issues, and told the jury that the burden was on the proponents, Mrs. High and Mrs. Goree, to prove that the will was executed in the manner and form required by law. The proponents duly excepted to that part of the instruction which placed the burden on them to show that the will was duly executed.

The second instruction given by the court was as follows: "I give you in charge § 10494 of Crawford & Moses' Digest, which I here read to you: 'Section 10494. Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner:

" 'First. It must be subscribed by the testator at the end of the will, or by some person for him, at his request.

" 'Second. Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses.

" 'Third. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament.

" 'Fourth. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator.

" 'Fifth. Where the entire body of the will and the signature thereto shall be written in the proper handwriting of the testator or testatrix, such will may be established by the unimpeachable evidence of at least three disinterested witnesses to the handwriting and signature of each testator or testatrix, notwithstanding there may be no attesting witnesses to such will; but no

will without such subscribing witnesses shall be pleaded in bar of a will subscribed in due form as prescribed in this act.' ''

Instruction No. 3, given by the court, was as follows:

"You are to determine from all the facts and circumstances in evidence whether a compliance with these requirements has been shown by a preponderance of the evidence.''

The proponents objected and excepted to the giving of the above instructions. There were several other instructions given, to which there were no exceptions, and which it is unnecessary to set out. The jury returned a verdict finding that the instrument offered as the last will and testament of Louisa Webb is not her last will and testament. The court rendered a judgment in accordance with the verdict, from which is this appeal.

On the issue as to whether the testatrix had sufficient mental capacity to execute her will and as to whether any undue influence was exercised by William High to cause her to execute the instrument as she did, the court correctly instructed the jury in conformity with the law as announced by this court in many decisions. *McCulloch* v. *Campbell,* 49 Ark. 369; *Milton* v. *Jeffers,* 154 Ark. 516. It could serve no useful purpose to set out and discuss the testimony in detail relevant to these issues. Suffice it to say there was sufficient testimony to sustain the verdict.

Instruction No. 2 declares the statutory requirements of the modes in general for the execution of wills. The appellants offered a general objection to the giving of this instruction. The instruction was in five paragraphs. The undisputed evidence showed that the instrument had been subscribed by the testatrix and that it was made by her in the presence of the attesting witnesses. Therefore there was no issue to submit to the jury on the first and second paragraphs of the instruction. There was likewise no contention that the entire body of the will was written by the testatrix, and there-

fore there was no issue to be submitted to the jury under the fifth paragraph. There was an issue on the third and fourth paragraphs, and the court correctly submitted these issues in its instructions Nos. 4 and 6. But the court erred in telling the jury, in its instruction No. 3, that they were to determine, from all the facts and circumstances in evidence, whether the requirements of the statute as set forth in its instruction No. 2 had been shown by a preponderance of the evidence. The appellants duly excepted to the giving of this instruction, and the effect of it was to allow the jury to determine from the evidence whether the requirements in the first, second, and fifth paragraphs of instruction No. 2 had been complied with when, under the evidence, there was no issue of that kind to be submitted to the jury. The instruction, in this form, authorized the jury to speculate concerning matters about which there was no dispute. *Crocker's Heirs* v. *Crocker's Heirs,* 156 Ark. 309-315.

The court therefore erred in submitting to the jury issues that were not warranted by the testimony, and this error was necessarily prejudicial to the appellants, for it is impossible to determine upon what issue the verdict was based. *Milton* v. *Jeffers, supra.* For the error in giving instructions Nos. 2 and 3 the judgment is reversed, and the cause remanded for a new trial.