GREGORY *v.* MISSOURI PACIFIC RAILROAD COMPANY.

Opinion delivered April 6, 1925.

1. RAILROADS—FAILURE TO KEEP LOOKOUT—CONTRIBUTORY NEGLIGENCE.—Under Crawford & Moses' Dig., § 8568, a railroad is liable for failure to keep a lookout which would have enabled it to avert an injury notwithstanding the contributory negligence of the person injured.

2. RAILROADS—COMPARATIVE NEGLIGENCE—INSTRUCTION.—It was error to instruct that the railroad company would not be liable for failure to keep a lookout if the negligence of the plaintiff was equal to or greater than the negligence of the trainmen.

3. TRIAL—INSTRUCTION—SPECIFIC OBJECTION.—An objection to an instruction relating to the duty of trainmen to keep a lookout, *held* sufficient to apprise the court of error in the instruction.

4. RAILROADS—KEEPING LOOKOUT—JURY QUESTION.—Whether trainmen operating defendant's train, which collided with plaintiff's motor bus at a public crossing, kept a proper lookout, *held* for the jury.

5.  RAILROADS—DUTY TO KEEP LOOKOUT.—Under Crawford & Moses'
    Dig., § 8568, it was the duty of the trainmen to keep a constant
    lookout for travellers along the highway, and if the appearance
    of a motorbus moving at the same rate of speed, indicated to
    the fireman that it would not stop, he could have signaled to the
    engineer to stop before the motor bus got too close to the crossing.

6.  TRIAL—ABSTRACT INSTRUCTION.—In an action for damages sus-
    tained at a railroad crossing, near which the railroad crossed a
    "cut-off track" of another railroad, an instruction as to the
    duty to stop before crossing another railroad was properly
    refused as abstract, where it appears that the "cut-off" track was
    nothing more than a switch or transfer track.

Appeal from Cross Circuit Court; *G. E. Keck,* Judge;
reversed.

STATEMENT OF FACTS.

Appellant sued appellee to recover damages in the
sum of $2,000 for negligently running into one of his
motor cars with one of its passenger trains.

The accident occurred at the crossing of a concrete
public highway with the railroad, between Marion, Ark-
ansas, and Memphis, Tennessee. At the crossing where
the accident occurred the highway crosses the railroad
track at an angle of about 65 degrees. About 800 feet
west of this crossing a track of the St. Louis & San
Francisco Railway Company, called a cut-off track,
crosses the railroad track at an angle of about 54 degrees.
At a point about 500 feet north of the crossing on the
public highway, a person looking to the west is apt to be
confused as to whether a train at the crossing of the
two railroads is upon the cut-off track or the main track
of appellee. The motor bus of appellant and the passen-
ger train of appellee were both going towards Memphis
at the time the train struck the motor bus and demolished
it. Between five and six hundred feet before you get
to the crossing in question, while traveling the public
highway, you can see where the railroad of appellee inter-
sects the cut-off track of the Frisco railroad, and a person
not familiar with the situation would think they were
all one track. You can see the Frisco crossing from a
point in the highway 500 feet north of the concrete public

highway crossing for a distance of 150 feet as you travel towards the public highway crossing. Then for 200 feet the view of the railroad is obscured by bushes, and then you have a clear view for between two and three hundred feet between the highway and the railroad.

G. H. Smith, one of the witnesses for appellant, had just passed the railroad crossing, going north on the concrete highway, in a truck, just before the accident occurred. He heard the train whistle just before he reached the crossing. The train was then on the other side of the cut-off crossing. After the witness had crossed the railroad and got about 150 or 200 feet, he passed the motor bus, which was running at the usual rate of speed, and it did not slacken its speed. Because of this fact, he began to doubt if the motor bus could go over the public crossing before the train reached it. There is a little bunch of shrubs between the highway and the railroad track, but that would not prevent one from seeing.

On the part of the railroad company, it was shown that the fireman was keeping a lookout, and gave the signal to stop the train as soon as he saw that the motor bus was not going to stop. He gave the engineer the stop signal when the train was about 150 or 200 feet from the crossing. The bus was about 75 feet from the crossing before the fireman saw that it was not going to stop. The bell was ringing, and the train was stopped as soon as it could be, when the emergency signal was given.

Other facts will be stated in the opinion.

There was a verdict for appellee, and, from the judgment rendered in its favor, appellant has duly prosecuted an appeal to this court.

*Frank Berry,* for appellant.

*Thomas B. Pryor* and *Daggett & Daggett,* for appellee.

HART, J., (after stating the facts). Counsel for appellant insists that the court erred in giving instruction No. 2 to the jury. The instruction is as follows: "If you find from the evidence in this case that the

employees in charge of the train failed to keep a constant lookout for persons or property on or near the track, and, if they had kept such a lookout, the employees in charge of said train could have discovered the perilous position of the bus in time to prevent the injury, by the exercise of ordinary care, after the discovery of such peril, your verdict should be for the plaintiff, notwithstanding you may find the man in charge of the bus' to have been guilty of contributory negligence, unless you find that his negligence, if any, was of a degree equal to or greater than the negligence of the employees in charge of the defendant's train, if any, in which event you should find for the defendant as to the alleged failure to keep a constant lookout."

The instruction appears to have been based upon § 8568 of Crawford & Moses' Digest, commonly called the lookout statute. The appellant specially excepted to the giving of the instruction, "because it authorizes judgment for the appellee notwithstanding discovered peril and failure to stop."

Counsel for appellant claims that the latter part of the instruction is erroneous because it precludes the jury from finding for appellant if his negligence, or that of his employees, was of a degree equal to or greater than the negligence of the employees in charge of appellee's train. We think counsel for appellant is correct in his contention. As we have just seen, the duty of the trainmen to keep a lookout, under the section above referred to, makes the railroad liable to the person injured, either in person or in property, for all damages resulting from neglect to keep the lookout, notwithstanding the contributory negligence of the person injured.

Section 8568 of Crawford & Moses' Digest makes it the duty of a railroad to maintain a constant lookout, and charges it with having seen what its servants would have seen had this lookout been kept; and if, by keeping this lookout, the railroad company could and would have discovered the traveler's peril in time to avert the injury,

it is liable, if it fails to do so, notwithstanding the fact that the traveler's contributory negligence placed him in peril. *Blytheville, Leachville & Ark. Sou. Ry. Co.* v. *Gessell,* 158 Ark. 569.

Thus it will be seen that the concluding part of the instruction is directly contrary to the statute. In short, the statute provides that the railroad shall be responsible to the person injured for all damages resulting to him or to his property from the neglect of the railroad company to keep the lookout provided by the statute, notwithstanding his contributory negligence. The concluding part of the instruction in question relieves the railroad company from liability, if the negligence of the servant of appellant was equal to or greater than the negligence of the employees operating the train which struck the motor bus of appellant.

But it is insisted that this error is not available to the appellant, because he made a specific objection to the instruction, and that the specific objection is not applicable to the concluding part of the instruction. We do not agree with counsel in this contention. The instruction was excepted to specially because it authorized judgment for the appellant notwithstanding discovered peril and a failure to stop. This is the very essence of the lookout statute, and, it having provided in specific terms that contributory negligence does not relieve the railroad company from liability to the person injured, the instruction was necessarily prejudicial to the rights of appellant. It relieved the railroad company from all responsibility, even if it discovered the peril in which the appellant's motor bus was placed, and failed to stop its train, provided the jury should find that the negligence of the appellant's driver was equal to or greater than the negligence of the operators of the train. We think the specific objection was sufficiently definite to have apprised appellee and the court trying the case of the error in the instruction.

This brings us to a consideration of whether the instruction was abstract, because the undisputed evidence

showed that the servants of appellee were keeping the lookout required by law and stopped the train as soon as it could be ascertained that the motor bus was not going to stop before it reached the crossing to allow the train to pass by.

According to the testimony of the engineer, he was on the right-hand side of the engine, which was going east, and could not see the approaching motor bus, which was coming towards the crossing from the fireman's side of the engine.

G. H. Smith passed the crossing going north, and passed the motor bus about 150 feet or 200 feet north of the crossing. According to his testimony, it was running at the usual speed, and, according to the testimony of others, the motor bus was running at the rate of 25 or 30 miles per hour. The bus had not slackened its speed when Smith passed it in his truck. At the time he passed it his attention was attracted to it, because he did not think it could get across the public crossing before the train got there, and it seemed to him like the bus was not going to stop. According to his testimony, while there was a little bunch of scrubs between the public highway and the railroad track, one could see five or six hundred feet. Now the motor bus was going as fast as the train, and the jury might have found that the fireman was not keeping a lookout as he said he was, or that, if he was keeping a lookout, the appearance of the motor bus indicated that it was not going to stop. As soon as the fireman gave him the stop signal, the engineer applied the brakes in emergency and made a perfect stop. The train was running about 25 or 30 miles an hour, and the bell was ringing automatically.

According to the testimony of the fireman, he was keeping a lookout, and thought the bus was going to drive up to the crossing and stop like it usually did. The train was about 150 or 200 feet from the crossing when the fireman gave the engineer the stop signal. At that time the motor bus was 70 or 75 feet from the crossing. The train was running at the rate of 25 or 30 miles

per hour. With all the appliances working properly, it required seven or eight hundred feet to stop the train. It was about seven or eight hundred feet from the cut-off crossing to the concrete road crossing.

When all the attending circumstances are considered, we think it cannot be said that the testimony of appellee's employees was undisputed on this point. We are of the opinion that it was a jury question. While it was the duty of the driver of the motor bus to look and listen for approaching trains, and to stop, if necessary, to allow such trains to go over the crossing in advance of his motor bus, it was equally the duty of the operators of the train to keep a constant lookout for travelers along the highway, and, if the appearance of the motor bus indicated that it was not going to stop for the crossing, the fireman should have signaled the engineer to stop before the motor bus got quite so close to the crossing. It will be remembered that the motor bus was going at about the same rate of speed as the train.

It is next insisted by counsel for the appellant that the court erred in giving instruction No. 6, which reads as follows: "You are instructed that all persons operating trains in this State are required to stop their trains at all places where any other railroad crosses, joins, unites or intersects, and you are further instructed that, while a failure to do so shall not be considered by you as an act of negligence on the part of the defendant, you may take this into consideration in determining whether the plaintiff's agent was guilty of contributory negligence."

We do not think there was any error in refusing to give this instruction. Our statute provides for the manner in which the railroads shall cross, intersect, or unite with other railroads, and that every railroad shall cause all its freight and passenger trains to stop at all points where another railroad crosses, joins, unites, or intersects with it, and that it shall take and receive on their trains all passengers, freights, and mail which such railroad so

crosses as for shipment at such point. Crawford & Moses' Digest, §§ 8489 and 8491.

In the case before us there is nothing in the record from which it may be inferred that the cut-off crossing was a railroad within the meaning of the statute just referred to. On the other hand, it is fairly inferable that it was nothing more than a switch or transfer track, and was not a crossing where trains were obliged to stop, within the meaning of the statute. Hence the instruction was abstract, and there was no error in refusing to give it.

For the error in giving instruction No. 2, as indicated in the opinion, the judgment will be reversed, and the cause remanded for a new trial.