MISSOURI PACIFIC RAILROAD COMPANY, ET AL., *v.* THOMPSON.

4-4951

Opinion delivered February 21, 1938.

666

R. E. *Wiley* and *Richard M. Ryan*, for appellants.

*Madrid B. Loftin, Kenneth C. Coffelt, Sol Thalheimer, Jr.*, and *Wm. J. Kirby*, for appellee.

HUMPHREYS, J. This suit was brought in the circuit court of Saline county by appellee against appellant to recover $3,000 for killing Nish Thompson at College Station near Little Rock, through the negligent operation of one of its trains by its employees in failing to keep a lookout for trespassers upon or near its track. Our lookout statute requires employees operating its trains to keep a constant lookout for persons and property on its tracks and makes the railroad responsible for damage to property or persons resulting from neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where, "if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care after the discovery of such peril, and the burden of proof shall devolve upon such railroad to establish the fact that this duty to keep such lookout has been performed." Section 11144, Pope's Digest.

Appellant filed an answer denying its train ran over and killed Nish Thompson, or that its employees failed to keep the lookout required by the lookout statute.

The cause was submitted to a jury upon the evidence adduced and under instructions given by the court resulting in a verdict and consequent judgment for $1,000 against appellant, from which is this appeal.

Nish Thompson owned a farm about one mile north of College Station. The railroad ran through his farm. He could have gone to his farm by walking on the track or on a road paralleling the railroad. There is evidence showing that he was seen in a small shoe shop at College Station at about 9:30 o'clock p. m. on the 11th day of July, 1936, stating as he left that he would be back in ten or fifteen minutes. He did not return. At 9:50 p. m. on said date the party to whom he was talking heard a train pass College Station some ten or fifteen minutes after she was talking to Thompson. This was the schedule time for train No. 168 to pass the station. Train No. 169, south-bound freight, passed College Station at 11:07 p. m., on the evening of July 11. Train No. 126, north-bound passenger, passed College Station at about 2:51 a. m. on the morning of July 12. Train No. 101, south-bound passenger, passed College Station at about 3:57 a. m. on the morning of July 12. The crews operating trains Nos. 169, 126 and 101 all testified that when their respective trains approached and passed by College Station they were running at reasonable rates of speed, and that they were keeping a constant lookout and did not see anyone on or near the tracks and did not run against or over anyone. Employees operating train No. 168 which passed College Station at 9:50 p. m. on the 11th day of July, 1936, did not testify in the case. They were not introduced as witnesses by appellant.

About five o'clock on the morning of the 12th of July, 1936, the body of Nish Thompson was found on the right-of-way within two or three feet of the track about forty feet north of College Station in a mutilated condition. His head and neck had gashes in them and his neck was broken. There was a large hole in his side.

An arm and leg were broken, the leg being turned over and the bone sticking out through the skin and his shoe was off that foot. His clothing was torn and covered with black looking grease about his shoulders and hips and his head was lying in a puddle of blood. The railroad track in either direction from the place where the body was found was straight and level for about one and a half or two miles and there were no intervening obstacles to prevent the employees from seeing a person on or near the track as trains approached the station from the north or south had a constant lookout been kept by them.

Appellant contends that there is no substantial evidence in the record showing that Nish Thompson was killed by any of its trains. This court said in the case of *St. Louis-San Francisco Ry. Co.* v. *Crick,* 182 Ark. 312, 32 S. W. 2d 815, that:

"Where the body of deceased was found upon defendant's right-of-way within a few feet of the track with his skull crushed and his shoulder crushed, with black oil smeared upon his hair and clothing, the jury were warranted in finding that he was killed by the defendant's train."

In view of the statement made by this court in the Crick case, *supra,* the facts in the instant case stated above are sufficient to support the finding of the jury that appellant's train No. 168 killed Nish Thompson through the negligent operation of its employees in failing to keep a lookout for persons on or near its track as it approached College Station. Had such a lookout been maintained the employees would have discovered Nish Thompson near to or upon the track in time to stop the train and avoid killing him. There was nothing to obstruct their view for a mile and a half or more and the jury was warranted in finding that the employees negligently failed to keep a lookout and stop the train in time to have prevented killing him. The circumstances detailed above were sufficient from which a jury might reasonably infer that the employees of the train had

failed to keep the lookout required by the statute. This court said in the case of Crick, *supra*, that:

"Evidence justifying a finding that deceased was killed by defendant's train raised a presumption of negligence and imposed upon defendant the burden of proving that a proper lookout was kept, as required by Pope's Digest, § 11144."

As stated above, the evidence was sufficient to warrant the jury in finding that appellant's train No. 168 ran over or against Nish Thompson and killed him a short time after he was seen alive in the shoe store at College Station; so under the statement in the Crick case, *supra,* the killing raised a presumption of negligence on the part of its employees and imposed upon appellant the burden of proving that the lookout required by the statute was kept. Appellant failed to meet this burden by not putting the crew of train No. 168 on as witnesses in the case.

We have carefully read the instructions which the court gave and refused and find that it committed no reversible error in refusing to give certain instructions requested by appellant and that the instructions given by the court correctly presented the law applicable to the facts in the case.

Appellant argues that the verdict is excessive. The record reflects that appellee was the owner of a farm which he was operating and that his wife, who was dependent upon him, resided upon the farm with him. Under these circumstances we do not think the verdict of $1,000 was excessive.

No error appearing, the judgment is affirmed.