Missouri Pacific Rd. Co., Thompson, Trustee,

*v.* Mitchell.

4-5310                                          122 S. W. 2d 544

Opinion delivered December 19, 1938.

*Thomas B. Pryor* and *Daggett & Daggett,* for appellant.

*D. G. Beauchamp,* for appellee.

Mehaffy, J.   Appellee filed a complaint in the Greene circuit court against the appellant for damages to his automobile, and alleged in the complaint that he was driving his automobile with several persons in the car, returning from a funeral, and undertook to drive across the tracks of appellant, where there was a dump, and just as he struck the railroad tracks he saw several persons coming up the dump meeting him, and one of the women in the car cried: "Look out!" and at this time the front wheel of appellee's car dropped off the

rail, and when the woman cried out appellee thought that he had struck someone, and in his excitement threw on the emergency brake and the foot brake, and got out of the car to ascertain if he had struck anyone, and found out that he had not. He then returned to the automobile and attempted to release the brake and drive off the track, but he was unable to release the brake; had thrown the brakes on tighter than ordinarily. After making all efforts to release the brakes, and being unable to do so, several of the parties in the automobile got out and attempted to push the car off the track, but were unable to do so; that one of appellant's trains was about two miles south of the crossing, and in plain view of said automobile; after the men were unable to release the brakes and drive the automobile off the track, or to push it off, appellant's train continued to approach at a high rate of speed, and appellee became alarmed; he instructed the passengers in his automobile to get out, as it was apparent that appellant's servants were not making any effort to avoid striking the automobile; the passengers in the automobile opened the doors and alighted in plain view of appellant's servants who were operating the train, and proceeded to go down the dump out of danger; at the same time one of the passengers proceeded down the railroad south a few feet from the automobile and waved his hands and arms to indicate to the persons operating the train that they were in danger; but, notwithstanding this, the persons operating the train carelessly, negligently and wilfully failed and refused to make any effort to slow up or stop, but continued at full speed and collided with appellee's automobile and ruined the same to appellee's damage in the amount of $600.

The appellant answered denying each and every allegation of the complaint, and also alleged in the answer that the collision and damage were caused solely and proximately by the defective condition of the brakes on appellee's automobile, and that it did not occur or result from any negligence on the part of appellant, its agents, servants, or employees.

There was a trial by jury, and the evidence of appellee and his witnesses sustained the allegations of the

complaint. The evidence showed that they could see the train for two and a half miles; there was no obstruction and nothing to prevent the persons operating the train from seeing the automobile; that the speed of the train was not reduced; but appellee testified that he went to the scene of the accident the next day and could distinguish a man two and a half miles down the track. The engineer and fireman got off the engine, and someone remarked that the train had been going 73 miles an hour; that appellee did not think the brakes had been applied on the engine, but he thought that he was opening up; he heard a peculiar sound.

Appellee's evidence was corroborated by other witnesses.

The engineer testified that he sounded the whistle at the crossing and saw the automobile when he was coming up to the crossing, but did not have time to stop; did all he possibly could do to avoid hitting the automobile; that the train was running about 60 or 65 miles an hour; and when operating an engine and seeing an automobile on the track a quarter of a mile away and not knowing whether it would get across, then the engineer makes a service application of the brakes; throws off 10 or 15 pounds of air, and if he sees that a man is going to get out, then he throws off 90 pounds of air, and it does not jam on; if the train is running 60 to 65 miles an hour, and he stops with an emergency application, it would unseat every passenger in the train. The engineer then testified as to the manner of stopping the train and the distance it required; and the distance at which the automobile could be seen from the engine.

The evidence shows, however, that the road was parallel with the railroad for some distance before the automobile reached the crossing; the engineer saw the automobile before it turned onto the crossing, and saw the automobile and persons on the track; saw them trying to shove the car off, and he was blowing the whistle trying to get them out of the way. The fireman did not testify.

Appellant requested the court to instruct the jury to return a verdict for it. The court refused to give this

instruction, and appellant excepted. The court then gave several instructions, and there was a verdict and judgment for $600. The case is here on appeal.

It was the duty of the persons operating the train to keep a constant lookout for persons and property on the track, and when persons are discovered on the track, it is the duty of those operating the engine to exercise reasonable care to avoid striking or injuring persons or property.

Appellant says that there are only two disputed questions of fact in the entire record, one of which, it is conceded, passes out of consideration in view of the jury's verdict. The second question, and the one that appellant argues, is: "When, by keeping a lookout, could the engineer have discovered the peril of the automobile?"

It is true that the engineer said that he did all he could to avoid striking the automobile after it was discovered; but the evidence of the appellee and his witnesses, and the circumstances in the case, made it a question for the jury, and the jury's verdict, where there is any substantial evidence to support, cannot be disturbed by this court.

In testing the legal sufficiency of the evidence to support the verdict, it must be considered in the light most favorable to the appellee. *Union Securities Co.* v. *Taylor,* 185 Ark. 737, 48 S. W. 2d 1100; *Fort Smith Traction Co.* v. *Oliver,* 185 Ark. 227, 46 S. W. 2d 647; *Ark. Baking Co.* v. *Wyman,* 185 Ark. 310, 47 S. W. 2d 45; *St. L.-S. F. Ry. Co.* v. *Hall,* 182 Ark. 476, 32 S. W. 2d 440; *Life & Casualty Ins. Co. of Tennessee* v. *Kinchin,* 183 Ark. 1153, 37 S. W. 2d 871.

There are many other decisions of this court to the same effect. We have uniformly held, also, that the jury is the sole and exclusive judge of the credibility of the witnesses and the weight to be given to their testimony; and when the case reaches this court, if there is any substantial evidence to sustain the verdict, it must be upheld, although it might appear to this court that it was against the preponderance of the evidence.

In this case, the verdict is supported by substantial evidence, and the judgment is affirmed.