Bond *v.* Mo. Pac. R. Co.

5-2249                                    342 S. W. 2d 473

Opinion delivered January 30, 1961.

*J. B. Milham* and *C. Van Hayes,* for appellant.

*Pat Mehaffy* and *B. S. Clark,* for appellee.

Ed. F. McFADDIN, Associate Justice. Joe Bond sued the Missouri Pacific Railroad for damages for personal

injuries. Trial to a jury resulted in a verdict and judgment for the Railroad Company, and Bond brings this appeal, urging for reversal the giving and refusing of certain instructions in the course of the trial. Bond was injured when a train of the Missouri Pacific Railroad Company hit an automobile stalled on the tracks and hurled the automobile against Bond.[1]

The events that resulted in Bond's injury will be detailed for a better understanding of the points discussed. William Rudder and Joe Bond (age 21) lived in Benton and were good friends. Rudder owned a Chevrolet car; and about 8:15 p.m. on April 17, 1959, Rudder, accompanied by two companions, Abbott and Robinson, went to Bond's house in Rudder's car and suggested that Bond join them and all go to a drive-in toward Bauxite, east of Benton. The four remained in the drive-in for some time, playing the jukebox; Rudder went to sleep in the back of the car, leaving Bond to drive Abbott and Robinson to their respective homes. They left the drive-in about 10:15, with Bond driving back west toward Benton. As he was driving on Edison Avenue in Benton he started across the two main line tracks of the Missouri Pacific Railroad, which goes approximately north and south, and the Edison Street crossing is in the center of a one degree curve. As the Rudder car (driven by Bond) was in its own lane of traffic and crossing the railroad tracks, a Ford car being driven by William Gatling, and going from Benton to Bauxite, turned to its left and out of its line of traffic and hit the Rudder car head-on. The Rudder and Gatling cars were thus stalled on the railroad tracks.

Three or four minutes were consumed in trying to get the cars moved off of the railroad tracks, but to no avail; and while the efforts were still being made the railroad crossing lights indicated an approaching train.

---

[1] We have several cases of a train hitting a vehicle stalled on the track. See *Mo. Pac. R. Co.* v. *Mitchell,* 197 Ark. 400, 122 S. W. 2d 544; *Mo. Pac. R. Co.* v. *Lemons,* 198 Ark. 1, 127 S. W. 2d 120; *Mo. Pac. R. Co.* v. *Barham,* 198 Ark. 158, 128 S. W. 2d 353; and *Mo. Pac. R. Co.* v. *Taylor,* 200 Ark. 1, 137 S. W. 2d 747. See also Annotation in 70 A.L.R. 2d 100 involving motor vehicles stalled or stuck on crossing.

Bond barely had time to wake up Rudder and get him out of the car, and Rudder and Bond were standing a short distance from the railroad tracks and north of the stalled cars when the northbound passenger train of the Missouri Pacific hit the stalled cars and hurled one into Bond and Rudder. As a result of the impact Rudder sustained fatal injuries, and Bond received the serious and painful injuries for which he filed this action.

The alleged negligence of the Railroad Company was the failure to keep the lookout as required by § 73-1002, Ark. Stats.[2] The Railroad Company denied all allegations of negligence and claimed that Bond was guilty of negligence and contributory negligence. As aforesaid, trial resulted in a judgment and jury verdict in favor of the Railroad Company; and Bond brings this appeal, claiming errors committed by the Trial Court in the giving and refusing of certain instructions and in permitting and refusing certain testimony. Appellant argues nine assignments; but we find it unnecessary to discuss all of them, in view of our conclusion that the judgment must be reversed and the cause remanded because of the giving of certain instructions that we herein mention.

I. *The Court's Instruction No. 2.* On its own motion, and over the objection of the plaintiff, the Trial Court gave the jury this instruction:

"You are instructed that as a matter of law that William Gatling was guilty of negligence, and if you find from a preponderance of the evidence in this case that his negligence was the sole proximate cause of the acci-

---

[2] The plaintiff's allegations were: "That the defendant Missouri Pacific Railroad Company, its agents, servants and employees failed to keep a lookout for persons and property upon or near the railroad tracks as required by Ark. Stats., 73-1002; that if it had kept said lookout its servants could have discovered the disabled automobiles upon said track as alleged in the complaint, in time to have slowed the train or stopped it in time to prevent striking said automobiles and injuring plaintiff, and defendant was negligent in failing to do so, it was negligent in failing to discover the automobiles upon the track and if it did discover them in time, then it was negligent in slowing its train or stopping it before striking said automobiles and preventing injuring plaintiff as alleged in his complaint."

dent and injuries complained of then your verdict would be for the defendant.''

This instruction was so erroneous as to require reversal of the judgment. The plaintiff alleged, and the case was tried on the theory, that the Railroad Company had failed to comply with the Lookout Statute, which is § 73-1002, Ark. Stats. Surveyors and other witnesses testified for the plaintiff as to the distance the train operators could have seen the crossing; and the railroad witnesses denied such testimony. It was conceded by all sides that the Rudder and the Gatling cars were stalled on the tracks from three to five minutes before the train reached the crossing. It is admitted that many intervening acts occurred in that period of time, such as the efforts of the parties to move the cars off the track, and the effort to get Rudder out of the car. So, for the Court to tell the jury that Gatling was negligent in getting in the wrong lane of traffic and causing a collision three or four minutes before the train came along, was to direct the jury's attention to a matter entirely too remote; and was also to direct the jury's attention away from the crucial issue of whether the Railroad Company had complied with the Lookout Statute.

Our cases on the Lookout Statute hold that, regardless of the negligence of the plaintiff in getting in a position of peril, nevertheless the Railroad Company is liable under the Lookout Statute for any injury done to the plaintiff if the operators of the train, by complying with the Lookout Statute, could have seen the perilous position of the plaintiff in time to have avoided injuring him. *C. R. I. & P. Ry.* v. *Bryant,* 110 Ark. 444, 162 S. W. 51; *Mo. Pac. R. Co.* v. *Manion,* 196 Ark. 981, 120 S. W. 2d 715. Our cases further hold that evidence which justifies a finding that the plaintiff was injured by the defendant's train raises a presumption of negligence, and the burden is on the railroad company to show that the proper lookout was kept. *St. L. S. F. Ry. Co.* v. *Crick,* 182 Ark. 312, 32 S. W. 2d 815; and *Mo. Pac. R. Co.* v. *Thompson,* 195 Ark. 665, 113 S. W. 2d 720. Even if Gatling and Bond had both been negligent, still such did not excuse the Railroad

Company from complying with the Lookout Statute. In *St. L. S. F. Ry. Co.* v. *Champion,* 108 Ark. 326, 157 S. W. 408, a little boy was knocked down on the railroad tracks by an older boy and was run over and killed by a switched car. The Railroad Company offered the defense in the trial that the negligence of the older boy was the cause of the death of the little boy; but, in affirming a judgment against the Railroad Company for violation of the Lookout Statute, Justice Wood, speaking for this Court, said:

".  .  . no matter what may have caused the unfortunate predicament of young Champion, if the employees of the appellant in charge of its train, by keeping the lookout, could have discovered his peril in time to have prevented his injury, by the exercise of ordinary care, then appellant is liable. See Acts of Arkansas, 1911, page 275; *Railway* v. *Lindley,* 151 S. W. 246; *St. Louis, I. M. & S. R. Co.* v. *Gibson,* 107 Ark. 431, 155 S. W. 510  .  .  .

"Therefore, under the statute, in suits for damages against railways, for the killing of a person on their tracks by the running of trains, where the negligence alleged is a failure to keep the lookout, the issue is as to whether or not the company was negligent as alleged, and not whether such negligence was the proximate cause of the death, for, as we have stated, if the person was killed while on the tracks of the railway, by the running of trains, and such person would not have been killed had the lookout required been kept, then the law makes such failure to keep the lookout the proximate cause of the death, no matter by what cause or under what conditions the party killed may have been upon the railway tracks. The being upon the railway tracks, whether by accident, through negligence, or from whatever cause, would be but a mere condition or incident to the killing and not the proximate cause thereof."

The Court's Instruction No. 2 was confusing to, and irrelevant of, the issues for the jury to decide, and should not have been given. *Frank* v. *Dungan,* 76 Ark. 599, 90 S. W. 17; *Sherrin* v. *Coffman,* 143 Ark. 8, 219 S.

W. 348; *High* v. *Sharp,* 166 Ark. 424, 265 S. W. 638; *Wisc. & Ark. Lbr. Co.* v. *McCloud,* 168 Ark. 352, 270 S. W. 599. See also 53 Am. Jur. p. 440, "Trial" § 555.

II. *The Defendant's Instruction No. 5.* Over the general and specific objections of the plaintiff the Court gave the defendant's Instruction No. 5, as follows:

"You are instructed that the operators of a train have the right to assume that a traveler approaching a railroad track will act in response to the dictates of ordinary prudence and the instinct of self-preservation, and will, in fact, stop before placing himself in peril, and the duty of the railroad employees to take precaution begins only when it becomes apparent that the traveler at the crossing will not do so. Therefore, if you find that the trainmen operating this train were keeping a lookout, they were not required to take emergency measures to attempt to avoid the accident until it became apparent to them as reasonable prudent men that the plaintiff was not going to stop when coming over the crossing."

Among other specific objections to this instruction the plaintiff made these:

"1. The instruction instructs the Jury on the question of travelers approaching a railroad crossing when the undisputed evidence in this case is that a stalled vehicle was on the crossing and was struck.

"2. The instruction is not applicable to the evidence in this case.

"3. The instruction misleads and confuses the Jury.

"4. The instruction submits to the Jury a question not pertaining to the lawsuit and would permit them to make a determination on an immaterial issue.

"5. The instruction is abstract."

The plaintiff was correct in these specific objections. There were no facts in this case that justified the giving of defendant's Instruction No. 5. It is not contended

by anyone that the engineer and the fireman saw the automobiles approaching the railroad track. The cars had stalled on the railroad tracks three to five minutes before the train arrived; and much of what we have said about the Court's Instruction No. 2 applies also to this instruction.

### III.  *Defendant's Instruction No. 8*

In view of the remand, we think we should also discuss this instruction which the Court gave, as follows:

"If you find from a preponderance of the evidence in this case that the plaintiff, the railroad and its employees were all guilty of negligence, and if you further find that the negligence, if any, of the plaintiff was less than the negligence, if any, of the railroad, then the plaintiff cannot recover the full amount of damages, if any, as shown by the evidence, but the amount of such damages, if any, should be diminished in the proportion that the plaintiff's negligence, if any, contributed to the accident and damages."

The plaintiff objected to the giving of the instruction claiming contributory negligence was not a defense to a violation of the Lookout Statute. If Act No. 296 of 1957 amended the Lookout Statute (§ 73-1002 Ark. Stats.), then the instruction was correct as given. This presents the most serious question in the case; and, after considerable study, we have concluded that Act No. 296 of 1957 did not amend the Lookout Statute; so defendant's Instruction No. 8 was erroneous.

Here is our reasoning on the matter:

(1)  The original Lookout Statute was Act No. 125 of 1891 and was to overcome such cases as *St. L. I. M. & So. Ry. Co.* v. *Monday,* 49 Ark. 257, 4 S. W. 782; and *Brown* v. *St. L. I. M. & So. Ry. Co.,* 52 Ark. 120, 12 S. W. 203, which held that the railroad company was under no duty to keep a lookout for trespassers. The preamble to Act No. 125 recites why it was adopted.

(2)   After Act No. 125 of 1891 became the law, this Court then held in actions brought for recovery under the 1891 Act that contributory negligence of the plaintiff might be pleaded as a defense by the railroad company. See *C. R. I. & P.* v. *Smith,* 94 Ark. 524, 127 S. W. 715; *St. L. I. M. & So. Ry. Co.* v. *Tucka,* 95 Ark. 190, 129 S. W. 541; and *St. L. I. M. & So. Ry.* v. *Watson,* 97 Ark. 560, 134 S. W. 949; and to overcome the effect of those said holdings the Legislature, by Act No. 284 of 1911, amended Act No. 125 of 1891 (then found in § 6607 Kirby's Digest) so as to provide that contributory negligence would not be a defense if the railroad employees, by keeping such lookout, could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care. This Act No. 284 of 1911 is now found in § 73-1002 Ark. Stats. and is what is referred to throughout this opinion as "the Lookout Statute." Since this Act of 1911, this Court has consistently held that contributory negligence was no defense to actions under the Lookout Statute. *Mo. Pac. R. Co.* v. *Barham,* 198 Ark. 158, 128 S. W. 2d 353; *St. L. S. F. Ry. Co.* v. *Horn,* 168 Ark. 191, 269 S. W. 576.

(3)   This Court also said in *Mo. Pac. R. Co.* v. *Taylor,* 200 Ark. 1, 137 S. W. 2d 747:

"Our statute on lookout, § 11144, Pope's Digest, imposes liability on railroads, *not only in cases of discovered peril;* but in *those instances also where, by the exercise of reasonable care,* the peril might have been discovered, and this, too, regardless of the contributory negligence of the injured person. *Railway Co.* v. *Horn,* 168 Ark. 191, 269 S. W. 576; *Gregory* v. *Mo. Pac. R. Co.,* 168 Ark. 469, 270 S. W. 621."[3] (Emphasis supplied.) This Court also said in *Mo. Pac. Rd. Co.* v. *Eubanks,* 200 Ark. 483, 139 S. W. 2d 413, that recovery under the

---

[3] In the last clear chance doctrine the duty is on the defendant to exercise care to avoid the injury *after* the position of peril of the plaintiff has been discovered (*Shearman* v. *Wooldridge,* 218 Ark. 16, 234 S. W. 2d 382); but in the Lookout Statute the duty is on the railroad company to exercise reasonable care to make the discovery of the position of peril of the plaintiff.

Lookout Statute was entirely separate and independent of recovery under the comparative negligence statute:

"Section 11153 of Pope's Digest, known as the Comparative Negligence Statute, has no application because this case was tried under § 11144, a statute commonly known as the Lookout Statute."

When we consider the foregoing, we conclude that it was never the intention of the Legislature that Act No. 296 of 1957 should amend or affect actions seeking recovery for violation of the Lookout Statute. Appellee points out that in *St. L. S. W. Ry. Co.* v. *Robinson,* 228 Ark. 418, 308 S. W. 2d 282, we held that Act No. 191 of 1955 (sometimes commonly called the "Prosser Act")[4] amended the Railroad Comparative Negligence Statute, which is § 73-1004, Ark. Stats.; and that Act No. 296 of 1957 merely replaced the Act No. 191 of 1955. Appellee also points out that both the 1955 Act and the 1957 Act contain the words, ". . . in *all* actions hereafter accruing . . ." From this appellee argues that an action brought for recovery under the Lookout Statute falls within the category of "all actions." But we call attention to the fact that the Railroad Comparative Negligence Statute, as found in § 73-1004, was originally adopted in 1919 by Act No. 156 of 1919, and it also contained the words, "in all suits." This Court has consistently held that the Railroad Comparative Negligence Statute (§ 73-1004, Ark. Stats.) did not apply to, nor amend, the Lookout Statute; and this Court has consistently held that contributory negligence was no defense against the person injured and seeking recovery against the railroad company for violation of the Lookout Statute. Also we point out that in Act No. 191 of 1955 it was stated that the Act extended to cases, ". . . in which the defendant has had the last clear chance to avoid the injury . . ."; and yet we recognized in *Mo. Pac. R. Co.* v. *Taylor,* 200 Ark. 1, 137 S. W. 2d 747, that

---

[4] At the Arkansas Legal Institute in 1955, there was a panel discussion on Comparative Negligence. See 10 Ark. Law Review, pp. 54 to 113, inclusive. In 11 Ark. Law Review, p. 391, there is a discussion of Act No. 296 of 1957.

the Lookout Statute went beyond the last clear chance. Furthermore, we point out that Act No. 296 of 1957 specifically repealed only Act No. 191 of 1955 and did not attempt to repeal or amend the Lookout Statute, or any other statute. Repeals by implication are not favored. See *Vick* v. *New,* 208 Ark. 874, 187 S. W. 2d 948, and cases there cited.

## CONCLUSION

Because of the giving of the instructions hereinbefore discussed, the judgment must be reversed and the cause remanded. It would unduly prolong this opinion to discuss each of the other assignments made by the plaintiff, some of which may possess merit and some of which may not; but in view of what has been said it is assumed that any mistakes made in the former trial will be avoided in any new trial.

Reversed and remanded.