Chicago, Rock Island and Pacific Railroad Company v.
Barbara Gipson

5-4797                                   439 S.W. 2d 931

Supplemental Opinion on Denial of Rehearing
Delivered May 12, 1969

[Original opinion delivered March 10, 1969, p. 296]

Carleton Harris, Chief Justice.    In her petition
for rehearing, appellee calls attention to the following
language in the opinion:

> "Appellee's case is founded upon contentions
> that the train crew did not keep a proper lookout;
> that the employees of the company negligently failed
> to sound the whistle or ring the bell to warn of the
> train's approach; that the high weeds and grass
> were permitted to grow along the right of way to
> such a height as to prevent appellees from seeing
> the train; and that the crossing was adnormally
> dangerous.

> "There is testimony that the train crew failed
> to sound a whistle or bell, and also testimony that
> these warnings were given; and there is testimony
> pro and con relative to the other contentions.

> "However, it is not really pertinent whether
> the whistle and bell were sounded in time to give
> warning; whether a proper lookout was maintained
> by the railroad employees; or whether there was

evidentiary support for the other allegations of negligence, for it is uncontradicted that Mrs. Gipson knew the train was coming while she was still sitting in the truck on the track.''

Since we did not feel that the matters mentioned were controlling in a determination of the litigation, we merely grouped them together, mentioning that there was some evidence on all allegations. Appellee contends that, under the case of *Bond* v. *Mo. Pac. R. Co.*, 233 Ark. 32, 342 S.W. 2d 473, irrespective of the negligence of the plaintiff in placing herself in a position of peril, the railroad company is liable under the lookout statute for any injury done to plaintiff, if the operators of the train, by complying with the lookout statute, could have seen the perilous position of the plaintiff in time to have avoided injuring her. She points out that we have said there was evidence, pro and con, on the question of keeping a proper lookout, and, therefore, this was a proper question for the jury to pass upon. Actually, the evidence that appellee relies upon was rather meager, and really amounts to her interpretation of part of the testimony; *i.e.*, there is no direct proof that proper lookout was not maintained.

All of the testimony on this point was given by members of the train crew. Fireman Paul was the only railroad employee who testified to having a view of the crossing. He said that, after the train crosses over the Fourche crossing, there is a fairly sharp curve to the left going west, up grade, for a quite a distance, and he testified that the view was obstructed by the cut or bend. He said that he was looking ahead, and the first view that he had was the top of the pickup truck, which he could see over the bank. The distance, according to the witness, was 350 to 400 feet, and he testified that he immediately applied the brakes. He said that his view was not obstructed by any bushes or weeds along the track, but the obstruction to seeing the crossing earlier was ''the cut or the bend on the side of the hill.''

Brakeman Mimms testified: "The first thing I noticed when the train threw on its brakes, and of course I looked around, by that time we had hit the pickup."

Brakeman Inman testified that his first knowledge was "when the brakes went to emergency—you know you can hear that when they go into emergency. I was on the righthand side, so I scooted over to the left side and looked just about at the time of the impact."

In the original brief, appellee argued that, from the statements of Mimms and Inman, a jury of reasonable men might have concluded that Paul did not apply the brakes immediately when he first observed the truck on the track.

The proof, however, is uncontradicted that appellee's vehicle could not be seen by the train crew from farther away than 400 feet. Paul further testified that the train was traveling 25 miles per hour, pulling 110 cars, and that it would take about 12 seconds to get the brakes on the train all the way through; that it would take not less than 700 feet or 2½ to 3 city blocks to stop the train at the aforementioned speed.

The engineer, Charles Cauthron, verified the fact that the train was traveling 25 miles an hour, and he said that the curve was a 25 mile an hour curve; he agreed that the train was carrying 110 cars, 63 of them loaded. Mr. Cauthron stated, "If I was going to make a normal stop for Bigelow, I would have started back a mile before I got to town. Because with this many cars it would have taken about a mile."

It therefore appears that, even if Fireman Paul did not tell the truth about applying the brakes immediately when he saw the truck, 350 to 400 feet away, the train could not have been stopped, even had the brakes been applied at that time, and the failure to immediately apply the brakes would not have been a proximate cause of the

accident. In *Kansas City Southern Railway Company* v. *Shane, Admnx.*, 225 Ark. 80, 279 S.W. 2d 284, this court said:

"* * * These three employees were the only eye-witnesses to the collision. A witness had testified that he thought the truck could have been seen by the appellant's operatives, when the train was approximately 258 feet away, for a distance of about 225 feet from the crossing. This difference between 150[1] and 225 feet as to the distance is not of material importance here in the circumstances because the physical facts show that this train could not have been stopped in time to have avoided the collision had the truck been discovered 225 feet away. In fact 1,350 feet was required in which to stop it."

It is thus apparent that appellee cannot prevail in this litigation on the basis of the contention that appellant's employee failed to keep a proper lookout.

The petition for rehearing is denied.

---

[1]The testimony reflected that the truck was first observed 150 feet away.